STATE of Wisconsin, Plaintiff-Respondent,

v.

Mario Santiago SANCHEZ, Defendant-Appellant-Petitioner,

Supreme Court

*No. 94–0208–CR. Oral argument February 1, 1996.—Decided May 22, 1996.*

(Also reported in 548 N.W.2d 69.)

For the defendant-appellant-petitioner there was a brief by *Matthew H. Huppertz* and *Carlson & Huppertz, S.C.*, Waukesha and oral argument by *Matthew H. Huppertz*.

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

ROLAND B. DAY, C.J. This is a review of an unpublished decision of the court of appeals affirming a judgment of the circuit court for Waukesha County, Joseph E. Wimmer, Judge. A jury found Mario Santiago Sanchez guilty of conspiring to deliver a controlled substance and failing to obtain a tax stamp for the controlled substance. Mr. Sanchez (defendant) appealed, claiming ineffective assistance of counsel at his trial. The court of appeals affirmed, holding that the defendant had failed to meet his burden, under *Strickland v. Washington*, 466 U.S. 668 (1984), of showing that his counsel's deficient performance prejudiced his defense. The issue on this appeal is whether the Wisconsin Constitution or cases of this court require the state, and not the defendant, to bear

the burden of proving prejudice in ineffective assistance of counsel claims. We conclude that the defendant does bear the burden of proving prejudice in ineffective assistance of counsel claims under both the Wisconsin and United States Constitutions, and thus the court of appeals correctly applied the *Strickland* standard in this case. We therefore affirm.

The following is a summary of the facts relevant to the defendant's claim of ineffective assistance of counsel; further facts will be noted as necessary in this opinion. The defendant's claim arises from the testimony of a police officer, Detective Steven Werner, at the defendant's trial. Detective Werner testified that he spoke with the defendant following the defendant's arrest. Detective Werner advised the defendant of his right to remain silent, and then asked the defendant about the drug sale which led to the defendant's arrest. The defendant denied involvement in the conspiracy to sell the drugs. Detective Werner then testified as follows:

> I told him he was probably a go-between for Mr. Rodriguez and the person that actually had supplied the marijuana, and also that he was waiting for this money to come from Mr. Rodriguez in order for the rest of the marijuana to be delivered, and Mr. Sanchez [the defendant] did not respond. I asked Mr. Sanchez then if I was lying when I said that. And Mr. Sanchez did not respond again. I then said, you know, I'm telling you the truth. And at this time Mr. Sanchez nodded very slightly indicating, I felt, that he agreed with me what I was saying, but in my report I also write [*sic*] that it should be noted that at no time did Mr. Sanchez actually state this to me, but that was the gist of our conversation.

In a post-conviction motion, the defendant claimed that the admission and use during closing arguments of this testimony was erroneous because the state cannot use the fact that the defendant exercised his privilege against self-incrimination by remaining silent. Defendant further claimed that the failure of his attorney to object to this testimony or to file a pre-trial motion for its suppression constituted ineffective assistance of counsel. The circuit court denied the motion and the defendant appealed. The court of appeals, in an unpublished opinion, affirmed the circuit court. The court of appeals applied the two-part test articulated in *Strickland*, which requires that a defendant seeking to establish a claim of ineffective assistance of counsel show that his or her counsel performed deficiently and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. The court of appeals held that the defendant's attorney had performed deficiently but this deficiency did not prejudice the defendant's defense because the prosecutor had downplayed the importance of the testimony and the other evidence in the case was "overwhelmingly probative of Sanchez's guilt."

 On this review, the defendant argues that the Wisconsin Constitution requires the burden of showing prejudice from deficient performance to be placed on the state. Defendant thus argues that the circuit court and court of appeals erred in applying the test articulated by the United States Supreme Court in *Strickland*, which places the burden of showing prejudice on the defendant. The interpretation of a provision of the Wisconsin Constitution presents a question of law which this court decides without deference to the courts below. *Polk County v. State Pub.*

*Defender*, 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994) (citing *State v. Beno*, 116 Wis. 2d 122, 136-38, 341 N.W.2d 668, 674 (1984)). The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment,[1] provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Article I, § 7 of the Wisconsin Constitution provides:

> **Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

---

[1] The Fourteenth Amendment provides in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

The language relevant to this case is each constitution's guarantee of the right to counsel. The federal Constitution phrases the right as: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Our state constitution provides: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ." This court has noted the difference in language between the two provisions, but has not considered whether the state constitution provides a different right to counsel than its federal counterpart. *See State v. Pitsch*, 124 Wis. 2d 628, 646-48, 369 N.W.2d 711 (1985) (stating that issue was not considered because not raised in parties' briefs).

The defendant argues that there should be a substantive difference in the protection afforded by these two provisions. In his brief, counsel for the defendant concedes that he has not found any evidence "as to why the drafters of the Wisconsin Constitution used different language than that found in the Sixth Amendment," but he nonetheless asserts that "it is safe to assume that whatever the intent of the drafters in Wisconsin, it was not identical to the protections contained in the Sixth Amendment." We do not share this assumption. The language of the Wisconsin provision, on its face, does not appear to differ so substantially from the federal Constitution's guarantee of the right to counsel so as to create a different right. Furthermore, the fact that our constitution chooses different wording in expressing a right than the federal Constitution has not prevented this court from concluding that the rights are substantially similar, and are to be interpreted identically. *See, e.g., Reginald D. v. State*, 193 Wis. 2d 299, 306-07, 533 N.W.2d 181 (1995) (due

process and equal protection guarantees of Fourteenth Amendment have their functional equivalent in art. I, § 1 of the Wisconsin Constitution even though art. I, § 1 does not use words "due process" or "equal protection").

This court has also concluded that another phrase within the section of the Wisconsin Constitution at issue in the present case is equivalent to its federal counterpart in the Sixth Amendment. In *State v. Burns*, 112 Wis. 2d 131, 141-44, 332 N.W.2d 757 (1983), this court held that the confrontation clause of Article I, § 7 of the state constitution, which provides "[i]n all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face . . . ," provides a right identical to that stated in the federal Constitution's confrontation clause, which provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." *See also State v. Martinez*, 150 Wis. 2d 62, 75 n.6, 440 N.W.2d 783 (1989). This does not compel us to hold that every phrase in Article I, § 7 of the Wisconsin Constitution has its equivalent in the Sixth Amendment. "Certainly, it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment. . . . This court has never hesitated to do so." *State v. Doe*, 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977) (citation omitted). However, we find it relevant in this case to note that this court has previously found another right in Article I, § 7 to be equivalent to its federal counterpart, despite a difference in the particular words chosen to express the right in the two constitutions.

Although unable to provide any textual support for his arguments, the defendant nonetheless argues that

cases of this court and the court of appeals, which will be discussed below, interpret our state constitution as providing a more expansive right to counsel than provided in the federal Constitution. The state in turn argues that cases of this court, including *Carpenter v. County of Dane*, 9 Wis. 249 [*274], 251 [*276] (1859), and *Browne v. State*, 24 Wis. 2d 491, 511, 129 N.W.2d 175, 131 N.W.2d 169 (1964), *cert. denied*, 379 U.S. 1004 (1965), have described the state constitution's right to counsel as being similar in purpose to the federal right. As this court observed in *Pitsch*, 124 Wis. 2d at 647, ineffective assistance of counsel cases decided in the Wisconsin Supreme Court prior to *Strickland* were generally unclear as to whether they relied on the state or the federal constitution in determining the scope of the right to counsel. The court cited, inter alia, *State v. Harper*, 57 Wis. 2d 543, 205 N.W.2d 1 (1973); *State v. Fencl*, 109 Wis. 2d 224, 325 N.W.2d 703 (1982); and *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983). In *Felton*, the court specifically based its discussion of ineffective assistance of counsel on both the state and federal constitutions, without noting any difference between the right to counsel granted in each:

> The United States Constitution and the Constitution of the State of Wisconsin guarantee the right to counsel. The right to counsel is more than the right to nominal representation. Representation must be effective. *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *State v. Koller*, 87 Wis. 2d 253, 274 N.W.2d 651 (1979); *State v. Harper*, 57 Wis. 2d 543, 205 N.W.2d 1 (1973).

*Felton*, 110 Wis. 2d at 499. Thus, although the standard formulated in *Felton* may have differed in some particulars from that later articulated in *Strickland*, that does not necessarily mean that the Wisconsin

228

Constitution dictated a different standard. The *Felton* court did not note any such distinction; furthermore, we note that one of reasons for the Supreme Court's grant of certiorari in *Strickland* was the fact that lower courts differed on the manner in which they applied the prejudice test, *see Strickland*, 466 U.S. at 684, and thus, before *Strickland*, it was unclear whether the federal Constitution required that the defendant show prejudice in order to prevail on a claim of ineffective assistance of counsel. We cannot conclude from *Felton* or the other pre-*Strickland* cases cited by the defendant that the Wisconsin Constitution provides any right to counsel of a nature or type distinct from the federal Constitution's right. The defendant cannot point to any clear statement that such a distinction exists; and, if anything, the cases themselves seem to view the right granted by the two constitutions as interchangeable.

This court's ineffective assistance of counsel cases since *Strickland* was decided have either not reached or not mentioned the state constitutional issue. In *Pitsch*, 124 Wis. 2d at 647, and *State v. Johnson*, 133 Wis. 2d 207, 224, 395 N.W.2d 176 (1986), this court concluded that it need not address any possible state constitutional claims because it held that the defendant's rights under the Sixth Amendment were violated. Both cases applied *Strickland* as the test for ineffective assistance of counsel under the Sixth Amendment. *See Pitsch*, 124 Wis. 2d at 641; *Johnson*, 133 Wis. 2d at 216-17. Other cases, such as *State v. Moats*, 156 Wis. 2d 74, 100-02, 457 N.W.2d 299 (1990), and *State v. Resio*, 148 Wis. 2d 687, 697-99, 436 N.W.2d 603 (1989), have applied *Strickland* without specifically noting whether the claim of ineffective assistance of counsel was based on the state or federal constitu-

tion. Finally, in *State v. Vennemann*, 180 Wis. 2d 81, 86, 97, 508 N.W.2d 404 (1993), this court cited both the Sixth Amendment and Article I, § 7 as the basis for the claim of ineffective assistance, and then applied *Strickland* as the test.

The defendant also argues that *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985), may require the state, and not the defendant, to bear the burden for the prejudice inquiry on claims of ineffective assistance of counsel. This argument has appeared, but has not been resolved, before this court. In *State v. Moffett*, 147 Wis. 2d 343, 433 N.W.2d 572 (1989), another case finding ineffective assistance of counsel under *Strickland* and the federal Constitution, this court stated:

> [T]he defendant urges that this court apply *State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985), to hold that the party with the benefit of the error (here, the state) should have the burden of proving that the error committed by counsel was not prejudicial.
>
> We need not reach or discuss the state constitutional issue the defendant raises, because in this case we conclude that the *Dyess* harmless error test is satisfied.

*Moffett*, 147 Wis. 2d at 358.

*Dyess* did not involve a claim of ineffective assistance of counsel. The defendant, Dyess, had been convicted of homicide by negligent use of a motor vehicle. *Dyess*, 124 Wis. 2d at 526. Dyess argued that an instruction to the jury at his trial misstated the applicable law. *Id.* at 533. This court concluded that the instruction was erroneous, and that the error was not harmless. *Id.* at 540. The court first observed that it had previously relied on various formulations of the test for harmless error. *Id.* at 540-43. The court then

concluded that the prejudice inquiry articulated in *Strickland* was "substantively the same" as Wisconsin's test for harmless error, *id.* at 544, though the court noted that the harmless error test in Wisconsin placed the burden of showing a lack of prejudice on the beneficiary of the error (in *Dyess*, the state) rather than on the defendant as in ineffective assistance of counsel claims. *Id.* at 544 n.11 (citing *State v. Billings*, 110 Wis. 2d 661, 667, 329 N.W.2d 192 (1983)).

Nothing in *Dyess* implies that *Strickland* should not be applied as the test for ineffective assistance of counsel under the state constitution, as it already is under the federal Constitution. *Dyess* is limited to the harmless error inquiry, which is distinct from a defendant's claim that a constitutional error was committed when he or she received ineffective assistance of counsel. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 n.2 (1993); *see also State v. Flynn*, 190 Wis. 2d 31, 51 n.7, 527 N.W.2d 343 (Ct. App. 1994), *cert. denied*, 115 S. Ct. 1389 (1995); *Commonwealth v. Pierce*, 527 A.2d 973, 980-81 (Pa. 1987) (Hutchinson, J., concurring). If anything, *Dyess* is an endorsement of the *Strickland* methodology. The only difference between the two applications of the prejudice test is the burden. *Dyess* remains the test for harmless error, *see State v. Harris*, 198 Wis. 2d 227, 256, 544 N.W.2d 545 (1996), and the burden rests on the beneficiary of the error in claims of harmless error to show that it was harmless.

The defendant also points to a case of the Wisconsin Court of Appeals, *State v. Marty*, 137 Wis. 2d 352, 404 N.W.2d 120 (Ct. App. 1987), which, according to him, stands for the proposition that *Dyess* may place the burden of showing a lack of prejudice in an ineffective assistance of counsel claim on the state. However, the court of appeals in that case did not reach the state

constitutional issue of which side should bear the burden of showing prejudice. *See Marty*, 137 Wis. 2d at 364 n.3. The court of appeals only applied the tests for prejudice as articulated in *Dyess*; the court of appeals in *Marty* did not shift the burden of showing prejudice to the state. *Id.* at 364-65. Nonetheless, the court of appeals in *Marty* may have created some confusion by appearing to apply *Dyess* to an ineffective assistance of counsel claim. *Dyess* is the proper test for harmless error, whereas *Strickland* is the proper test for ineffective assistance of counsel, even though the two tests overlap at many points. *See Dyess*, 124 Wis. 2d at 544 n.11. Those portions of *Marty* which applied *Dyess* as the test were in error, and are hereby overruled. *See Marty*, 137 Wis. 2d at 364-65.

For several reasons, we conclude that in ineffective assistance of counsel cases the burden is properly placed on the defendant to show that his or her counsel's deficient performance prejudiced the defense. First, as already noted, we find little or nothing in the wording of our state constitution and in the cases of this court supporting the defendant's contention that the Wisconsin Constitution provides a different right to counsel, and hence requires us to place the burden of showing prejudice on the state rather than the defendant. Second, we note that various practical considerations encourage us to follow the federal rule under *Strickland*. First among these considerations is the fact that the source of the violation, and thus much of the information necessary to establish and prove a claim of ineffective assistance of counsel, is on the side of the defendant rather than the state. As the Supreme Court stated in *Strickland*:

> [A]ctual ineffectiveness claims alleging a defi-
> ciency in attorney performance are subject to a
> general requirement that the defendant affirma-
> tively prove prejudice. *The government is not
> responsible for, and hence not able to prevent, attor-
> ney errors that will result in reversal of a conviction
> or sentence.*

*Strickland*, 466 U.S. at 693 (emphasis added). Placing the burden on the prosecution to show prejudice, then, would serve no deterrent purpose because the government cannot avoid the errors in the future.

The *Strickland* Court also noted that the Fifth Circuit Court of Appeals, in the opinion reviewed by the *Strickland* Court, had placed the burden of showing prejudice on the defendant in "cases of deficient performance by counsel, where the government is not directly responsible for the deficiencies and where evidence of deficiency may be more accessible to the defendant than to the prosecution." *Id.* at 682 (citing *Washington v. Strickland*, 693 F.2d 1243, 1262 (5th Cir. 1982)). As a practical matter, we note that investigating claims of prejudice arising from ineffective assistance of counsel is often far more difficult, if not impossible, for the state than for the defendant. Claims of ineffective assistance may involve conversations between the defendant and counsel, which may be protected by the attorney-client privilege, or may involve matters on which the defendant would invoke his or her Fifth Amendment right against self-incrimination. Asking the state to bear the burden of showing prejudice in such situations is unrealistic.

As another example of a practical consideration in favor of placing the burden on the defendant to show prejudice, consider the following hypothetical. A defendant is convicted of a crime. The defendant appeals,

claiming that she received ineffective assistance of counsel, and makes a showing that defense counsel was deficient in failing to contact any possible alibi witnesses before the trial.[2] If the burden is on the prosecution to show a lack of prejudice, the state would have to prove a negative, that is, demonstrate that no witness that the defendant could possibly have called would have prejudiced the state's case. Making such a case would present difficulties and complexities of proof to the point of impossibility. If, on the other hand, the defendant bears the burden, the defendant must simply come forward with a witness or witnesses whose testimony is "sufficient to undermine confidence in the outcome" of the case. *See Strickland*, 466 U.S. at 694. If the defendant (who is more likely than the state to be aware of alibi witnesses) cannot provide any such witnesses, the defendant fails to meet the burden. The inquiry would end, avoiding the difficulties and unrea-

---

[2] The concurrence claims that making a showing of deficient performance in such a case would "presumably require the defendant to come forward with the alibi witness and explain why that witness's testimony was integral to the defendant's case," Concurrence at 245, but this is not the case. The deficiency here alleged is that defendant's counsel failed to contact *any* witnesses. Proof of deficiency, therefore, could consist of showing that counsel made no such efforts, most easily demonstrated by counsel's own testimony.

The concurrence is perhaps making a point which *its* author has previously noted, that "[s]eparating the concepts of 'ineffectiveness' and 'prejudicial' is a difficult and perhaps futile task." *See Fencl*, 109 Wis. 2d at 252 (Abrahamson, J., concurring). If so, then there is all the more reason to place the burden of proof on one side for both deficiency and prejudice—as we do in this opinion—rather than placing on circuit court judges the "difficult and perhaps futile task" of determining which side bears the burden on a particular point.

sonableness of requiring the prosecution to prove a negative. Placing the burden of showing prejudice on the defendant, then, facilitates and streamlines the prejudice inquiry of an ineffective assistance of counsel claim.

We also note that another advantage of conforming our state rule to the federal rule is uniformity. In the context of the law of search and seizure under the Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution, this court has stated:

> We may interpret Article I, sec. 11 differently than the Supreme Court interprets the Fourth Amendment. *State v. Weide*, 155 Wis. 2d 537, 547, 455 N.W.2d 899 (1990). However, we have consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment; in part because the text of Article I, sec. 11 of the Wisconsin Constitution and the text of the Fourth Amendment are identical, except for a few inconsequential differences in punctuation, capitalization, and the use of the plural, and in part to avoid confusion concomitant with the use of different standards. *State v. Fry*, 131 Wis. 2d 153, 172-73, 388 N.W.2d 565 (1986), *cert. denied*, 479 U.S. 989 (1986); *accord Weide*, 155 Wis. 2d at 546-47.

*State v. Guzman*, 166 Wis. 2d 577, 586-87, 480 N.W.2d 446 (1992), *cert. denied*, 504 U.S. 978 (1992) (footnote omitted). In the same manner, conforming our state test for prejudice in ineffective assistance of counsel cases to the federal standard avoids possible confusion arising from multiple standards.

235

Thus, for the reasons stated, we conclude that the test for ineffective assistance of counsel articulated in *Strickland* and *Johnson* should also be the test for claims of ineffective assistance of counsel under our state constitution. We must next apply this test to the case at bar.

Under the *Strickland* test, we may reverse the order of the two tests and, if the defendant has failed to show prejudice, omit the inquiry into whether counsel's performance was deficient. *Moats*, 156 Wis. 2d at 102 (citing *Strickland*, 466 U.S. at 697). In order to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We are to consider the totality of the circumstances before the trier of fact. *Id.* at 695.

Determining whether particular actions constitute ineffective assistance of counsel is a mixed question of law and fact. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994). "An appellate court will not overturn a trial court's findings of fact concerning the circumstances of the case and the counsel's conduct and strategy unless the findings are clearly erroneous." *State v. Knight*, 168 Wis. 2d 509, 514 n. 2, 484 N.W.2d 540 (1992). However, whether counsel's performance was deficient and whether the deficient performance prejudiced the defense are questions of law which this court decides without deference to the

court of appeals or the circuit court. *Flores*, 183 Wis. 2d at 609.

We conclude that, under the totality of the circumstances in the present case, the defendant's defense was not prejudiced. Even if the performance of the defendant's counsel was deficient in failing to object to or suppress the police officer's testimony about the defendant's silence in response to certain accusatory statements, the evidence against the defendant was, in the words of the court of appeals in its unpublished decision in this case, "overwhelmingly probative" of his guilt, and thus the defense was not prejudiced by the admission of the testimony.

This evidence may be summarized as follows. Craig Moser (Moser), an undercover police officer, testified that he had purchased marijuana from Ricardo Rodriguez (Rodriguez) on approximately four occasions prior to January 9, 1991. Moser testified that he told Rodriguez that he wanted to buy two pounds of marijuana. Rodriguez said that Moser would have to take him to his supplier in order to get the marijuana. Moser testified that on the evening of January 9, 1991, he picked up Rodriguez at his home. Moser drove Rodriguez to the Eastside Pub in Waukesha, where Rodriguez said he would meet his supplier.

Moser testified that he parked about seventy-five feet from the entrance to the pub. Although it was dark, Moser testified that he was able to see the area because it was lit by streetlights. Rodriguez told Moser to wait in the car while he went into the pub to speak to his supplier. Rodriguez entered the pub. Less than five minutes later he returned to the car and told Moser that his supplier was speaking to someone else and that they would have to wait a short while. Rodriguez

subsequently re-entered the pub; shortly thereafter he came back to the car and told Moser that the supplier was going to come outside and provide a one-ounce sample of the marijuana to Moser so that Moser could check its quality.

Moser testified that he and Rodriguez left the car, and Rodriguez then walked towards the pub. Moser saw Rodriguez meet another male, whom Moser identified as the defendant. Moser saw the two men talk and then walk over to a large gray automobile. Moser saw the defendant open the front door of the car, reach inside, grab something, and hand it to Rodriguez. Rodriguez placed the object in his jacket pocket.

Moser testified that Rodriguez then walked back to him, took a small baggie out of his jacket pocket, and handed it to Moser, saying it was "real good stuff from Texas." Moser testified that the baggie appeared to contain marijuana. Moser also testified that Rodriguez said that the rest of the marijuana was in the vehicle near where his supplier was standing. Moser told Rodriguez that he didn't want to perform the deal out on the street, and they drove a short distance down the street to another parking lot. Moser then retrieved a wallet from the trunk of his car containing $4040, which he showed to Rodriguez. Rodriguez whistled and signaled towards where the defendant was standing. Other officers on the scene then arrested Rodriguez and the defendant, who was still standing in the parking lot near the gray automobile.

Moser testified that he could no longer see the defendant when he moved his car to the parking lot. Detective Steven Werner (Werner), another officer on the scene, testified that he was inside a surveillance van parked across the street from the Pub and was able to observe the defendant up to the time of his arrest.

238

Werner also testified that he searched the defendant after his arrest, and found a piece of paper with the name "Rick" and Rodriguez's telephone number written on it. Werner also found car keys on the defendant which fit the gray automobile that Moser had observed. Another officer found a paper bag containing 925 grams (approximately 2.02 pounds) of marijuana in the back seat of the gray automobile.

The defendant told Werner that the bartender at the pub had given him Rodriguez's telephone number and that he had found the keys in the bathroom at the pub. The defendant acknowledged that he knew Rodriguez, but said that Rodriguez was only an acquaintance. The defendant told Werner that he was outside the pub because he was on his way home.

We conclude that, even assuming that the defendant's counsel was deficient in allowing the disputed testimony into evidence, the remainder of the evidence in this case leaves no doubt of the defendant's guilt. We therefore hold that the defendant has not met his burden of showing that he was prejudiced by his counsel's representation.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree that Sanchez's conviction should be affirmed. Regardless of who bears the burden of proving prejudice in an ineffective assistance of counsel claim, evidence of guilt described by the court of appeals as "overwhelmingly probative" demonstrates that Sanchez was not prejudiced by the State's violation of his right to remain silent.

I nevertheless write separately because I conclude that under Article I, § 7 of the Wisconsin constitution[1] and this court's longstanding harmless error analysis, *see, e.g., State v. Dyess*, 124 Wis. 2d 525, 370 N.W.2d 222 (1985), the State should have been required to prove beyond a reasonable doubt that the errors caused by Sanchez's trial counsel did not prejudice his defense.[2]

---

[1] This court's interpretation of the right to counsel inscribed in Article I, § 7 has long differed from the interpretation which the U.S. Supreme Court has given to the Sixth Amendment right to counsel. As early as 1859, more than one hundred years before the United States Supreme Court announced a similar principle in federal constitutional law, *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Wisconsin Supreme Court held that indigent defendants were entitled to counsel furnished at the government's expense. *Carpenter v. Dane Co.*, 9 Wis. 249 [*274] (1859). Interpreting Article I, § 7 of the Wisconsin constitution, Justice Cole reasoned that it would be "mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial of the matters with which he was charged, and yet to say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real permanent value to him." *Id.* at 251 [*276]. *See also State v. Doe*, 78 Wis. 2d 161, 171-72, 254 N.W.2d 210 (1977) (citing *Carpenter* in noting that "it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment"); *Sparkman v. State*, 27 Wis. 2d 92, 98, 133 N.W.2d 776 (1965) (noting that "Wisconsin from early statehood . . . has not depended upon or awaited the increasing scope of the commands of the Fourteenth amendment" in interpreting the Wisconsin constitution's right to counsel provision).

[2] The court of appeals concluded that the State violated Sanchez's Fifth Amendment right to remain silent and that his counsel's failure to object rendered his counsel's performance

As the majority opinion correctly states, this court's harmless error analysis places upon the beneficiary of the error the burden of demonstrating that the error is harmless. To satisfy this burden, the beneficiary of an error must "establish that there is no reasonable possibility that the error contributed to the conviction." *Dyess*, 124 Wis. 2d at 543. Conversely, under the test fashioned by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, *reh'g denied*, 467 U.S. 1267 (1984), and adopted by this court today, it is the defendant alleging ineffective assistance of counsel who "must show . . . a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[3]

The discrepancy between how the burden of proof is assigned when a defendant alleges error as opposed to ineffective assistance of counsel presents a paradox. If, on appeal, a defendant alleges error, the state must prove that the defendant was not prejudiced thereby and that the error was therefore harmless. But if a defendant alleges ineffective assistance of counsel because trial counsel failed to object to the same error,

ineffective. *State v. Sanchez*, No. 94-0208-CR, unpublished slip op. at 4-5 (Wis. Ct. App. Feb. 22, 1995). The majority opinion concludes that even assuming *arguendo* that his counsel performed ineffectively, Sanchez failed to demonstrate that he was prejudiced by his counsel's performance. Majority op. at 236.

[3] For criticism of the *Strickland* decision, see Richard L. Gabriel, *The Strickland Standard for Claims of Ineffective Assistance of Counsel: Emasculating the Sixth Amendment in the Guise of Due Process*, 134 U. Pa. L. Rev. 1259 (1986); William S. Geimer, *A Decade of Strickland's Tin Horn: Doctrinal and Practical Undermining of the Right to Counsel*, 4 Wm. & Mary Bill Rts. J. 91 (1995).

the rule we announce today requires that defendant to prove that the error was prejudicial and therefore harmful.

Hence if the error which allegedly harmed Sanchez had been framed in terms of a violation of the defendant's right to remain silent rather than as a violation of his right to the effective assistance of counsel, the State would have been compelled to demonstrate that this error was harmless.[4]

---

[4] *See State v. Fencl*, 109 Wis. 2d 224, 232-240, 325 N.W.2d 703 (1982) (defendant's trial counsel did not object to state's references at trial to the defendant's prearrest silence; because the court addressed the claim raised on appeal under the Fifth rather than the Sixth Amendment, the state was required to carry the burden of persuasion demonstrating that the error was harmless); *Rudolph v. State*, 78 Wis. 2d 435, 441-43, 254 N.W.2d 471 (1977), *cert. denied*, 435 U.S. 944 (state's reference at trial to defendant's election to remain silent raised as Fifth Amendment constitutional error rather than as ineffective assistance of counsel; defense counsel had objected to reference at trial but had failed to request an admonitory instruction and failed to renew objection on post-conviction motion; the state was required to carry the burden of persuasion demonstrating that the error was harmless); *Odell v. State*, 90 Wis. 2d 149, 155-57, 279 N.W.2d 706 (1979) (although defense counsel had failed to object, state's reference at trial to defendant's election to remain silent raised and addressed on appeal as Fifth Amendment constitutional error rather than as ineffective assistance of counsel; court applied harmless error analysis, placing the burden of persuasion to demonstrate that the error was harmless on state); *State v. Kircher*, 189 Wis. 2d 392, 404-05, 525 N.W.2d 788 (Ct. App. 1994) (although defense counsel failed to object, state's reference at trial to defendant's election to remain silent raised and addressed on appeal as Fifth Amendment constitutional error rather than as ineffective assistance of counsel; state was required to prove that the error was harmless).

The majority opinion suggests that the defendant rather than the state should be required to prove that a defendant has been prejudiced by ineffective counsel because ordinarily a defendant will possess much of the information necessary to establish such a claim. Majority op. at 232. While I agree that in many cases knowledge concerning whether counsel has been ineffective will initially be more accessible to the defendant, I disagree with the majority's conclusion that the defendant must therefore shoulder the burden of persuasion to demonstrate prejudice.

In shifting the burden of proving prejudice to the defendant, the majority opinion emphasizes the "difficulties and complexities" the state would encounter in proving that a defendant was not prejudiced by defense counsel's serious error, and downplays the difficulty of the defendant's initial burden to prove that counsel was indeed ineffective. Yet, as the court has indicated, a defendant cannot demonstrate that counsel has been ineffective by merely alleging error; even if a defendant's counsel makes several errors which competent counsel would have avoided, "[t]he fact that [counsel] should have acted differently . . . does not establish that his assistance was ineffective." *State v. Fencl*, 109 Wis. 2d 224, 228, 325 N.W.2d 703 (1982) (citing *State v. Rock*, 92 Wis. 2d 554, 560, 285 N.W.2d 739 (1979)); *see also Strickland*, 466 U.S. at 687-690 (to meet the ineffective assistance of counsel prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment").[5]

---

[5] Ordinarily, then, errors "so serious" as to establish an ineffective assistance of counsel claim will either be of constitutional magnitude or will be plain errors. A plain error is an error so plain that it affects an appellant's substantial rights. *State v.*

Thus in the hypothetical alibi case posed by the majority opinion, Majority op. at 233-34, the state would not be required to prove prejudice until the defendant had first presented sufficient evidence to demonstrate that trial counsel's failure to produce a particular witness represented an error "so serious" as to render trial counsel's performance ineffective.[6]

*Sonnenberg*, 117, Wis. 2d 159, 176-77, 344 N.W.2d 95, 99 (1984). While appellate courts find plain error "impossible to define," "they know it when they see it." *Id.* at 177 (citation omitted). The court will, at its discretion, address both plain and constitutional errors raised for the first time on appeal. *Id.* at 176-77; Wis. Stat. § 901.03(4) (1993-94) (plain error); *In Interest of Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846 (1983); *State v. Johnson*, 60 Wis. 2d 334, 343, 210 N.W.2d 735 (1973) (constitutional error).

Hence, when defense counsel makes timely objection to any errors, the state must prove that those errors were harmless. Similarly, when defense counsel fails to object to such errors but the court nevertheless decides to take them up on appeal, the state must prove that those errors were harmless. When, conversely, defense counsel fails to object to such errors and an appellate court declines to consider them, the rule the court announces today for ineffective assistance of counsel claims requires the defendant to prove that those errors were prejudicial. This rule rewards defendants whose counsel are competent and object while frequently increasing the burden of proof for those whose counsel are incompetent, even when the same error is at issue in both situations.

[6] When a defendant satisfies the burden of proving that trial counsel has made an error of this magnitude, the defendant has *ipso facto* raised the possibility that he has been prejudiced. *See Briones v. State*, 848 P.2d 966, 976-77 (Haw. 1993) (rejecting the *Strickland* test; a defendant who has established that trial counsel was ineffective raises the prospect that he or she has been prejudiced and need not show actual prejudice).

Evidence sufficient to meet this initial burden—which would presumably require the defendant to come forward with the alibi witness and explain why that witness's testimony was integral to the defendant's case—would eliminate any "difficulties and complexities" the state might have otherwise faced in meeting its own, subsequent burden of demonstrating that the defendant was not prejudiced by counsel's failure to produce this witness.

For the reasons set forth, I concur.