State of Wisconsin, Plaintiff-Respondent,
v.
Perry A. Felton, Defendant-Appellant.
No. 03-2344-CR.
Court of Appeals of Wisconsin.
Opinion Filed: February 24, 2004.
¶1. FINE, J.
Perry A. Felton appeals from a judgment entered on a jury verdict convicting him of knowingly violating a domestic-abuse injunction, as an habitual criminal, see Wis. Stat. §§ 813.12(4), 813.12(8)(a), 939.62, and from the trial court's order denying his motion for postconviction relief. He claims that the trial court erred when it: (1) excluded evidence that the alleged victim had told him and his mother that, according to the mother, the alleged victim "`had the restraining order taken off'"; (2) refused to grant him an adjournment of the trial; (3) determined that his trial lawyer did not give him prejudicially deficient representation; and (4) denied his request for a new trial in the interests of justice. Although the State on appeal agrees with Felton's contention that the trial court should have granted him an adjournment, and does not address Felton's other allegations of trial-court error, this is not a case between private litigants and we are not bound by the State's concession or its non-response to Felton's other contentions. See State v. Gomaz, 141 Wis. 2d 302, 307, 414 N.W.2d 626, 629 (1987). We affirm.

I.
¶2. At the request of Naticia Felton, Perry Felton's wife, a domestic-abuse injunction was issued against Mr. Felton prohibiting him from having any contact with her, including contact by telephone.[1]See Wis. Stat. § 813.12(4). The injunction was, by its terms and on its face, effective until November 7, 2003. The injunction was served on Mr. Felton in November of 2001. Mrs. Felton claimed that her husband violated the injunction by calling her several times on August 26, 2002. As a result of her complaint to the Milwaukee police, Mr. Felton was arrested later that day.
¶3. On September 27, 2002, Mr. Felton attended with his lawyer a pretrial conference, during which a jury trial was set for October 15, 2002. On October 15, however, Mr. Felton's lawyer told the trial court that he was "not prepared to proceed." He said that he "didn't have very much time to speak to Mr. Felton," between September 27 and October 15, and, also, that there were "potential witnesses" and "[w]e have not been able to get them to court for today's date." The State's witnesses, Mrs. Felton and a police officer, were in court, and the State objected to any adjournment.
¶4. In support of his motion to adjourn the trial, Mr. Felton's lawyer told the trial court that his client "insists he has witnesses who[m] he can't have here today." The lawyer identified them as Mr. Felton's brother, who was attending college in Louisiana; a cousin who was attending school in Madison but, apparently was in Milwaukee that day; and Mr. Felton's mother, who lived in Milwaukee, and whom the lawyer first "assume[d] will be available," but later told the trial court that she "could not be present today because of a work complication" that he did not otherwise specify.
¶5. After the jury was selected, Mr. Felton said he wanted a different lawyer because his attorney did not produce the witnesses. In colloquy with the trial court, Mr. Felton said that he did not identify them for his lawyer either at the September 27 pretrial hearing or later because, he claimed, "[m]y attorney didn't consult with me" even though he had alerted the lawyer that he had witnesses he wanted to call. Mr. Felton admitted, however, that although he lived with his mother he did not tell her, or alert his cousin and brother that he wanted them to come to court for him. He explained: "I felt they both [sic] should get subpoenaed." The trial court was incredulous:

THE COURT: You had three weeks [between September 27 and October 15]. And in three weeks, you don't talk to the woman you live with [Mr. Felton's mother] or anybody else. That's amazing to me. You're on trial for a serious charge, and you didn't think it important enough to talk to the people and to find out where they would beor available. Do you mean to tell me your brother won't be back until break? You heard the date for trial set. You know your brother goes to college. You didn't say, wait a minute. That's not a good date for my witness. Won't be available, did you?

THE DEFENDANT: I haven't had a chance to talk

THE COURT: When it was stated in court and they say October 15 for jury trial date, you didn't raise your hand and say, but my brother's out of town, did you?

THE DEFENDANT: I didn't know that's what I had to do at that time.

THE COURT: What do you think was going to happen on a jury date[?] What do you think?

THE DEFENDANT: I'm saying

THE COURT: What do you think was going to happen on a jury trial?

THE DEFENDANT: A trial on a jury date.
Mr. Felton then told the trial court that although one of his defenses was that his brother-not he-had called Mrs. Felton, "I didn't know I had only my key witness is my brother. [sic] He was there at that time when the phone calls supposedly made [sic]. That's what I'm trying to say. He was there when the phone call supposedly made [sic]." When the trial court asked Mr. Felton when he had spoken to his brother, Mr. Felton replied: "I barely have phone conversations with him," and that he did not talk to his brother at all after the pretrial hearing on September 27 because "I had no way to contact him at that time." The trial court then presciently asked, rhetorically: "How do you expect [defense counsel] to contact [the brother], if you don't know where he is and how to contact him and he's your essential witness?" The trial court concluded that it believed "it is a manipulation and you waited until today to say these things and try to get an adjournment."
¶6. As noted, the trial court also granted the State's motion in limine to prevent any evidence that Mrs. Felton told Mr. Felton and his mother that she "`had the restraining order taken off,'" ruling that the evidence was not relevant.

II.
¶7. Mr. Felton raises four issues on this appeal. We address them in turn.

A. Exclusion of evidence that Mrs. Felton told him and his mother that she "`had the restraining order taken off.'"

¶8. A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made "`in accordance with accepted legal standards and in accordance with the facts of record.'" State v. Pharr, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (quoted source omitted). Whether a trial court's decision to admit or exclude evidence comports with legal principles is a matter that we review de novo. State v. Pittman, 174 Wis. 2d 255, 275, 496 N.W.2d 74, 82 (1993). Vesting discretion in the trial court in connection with the admission or exclusion of evidence means, however, that the trial court has "`a limited right to be wrong,'" and we will not reverse merely because we may disagree with the trial court's ruling; "`questions of relevancy cannot be resolved by mechanical resort to legal formulae.'" Pharr, 115 Wis. 2d at 345, 340 N.W.2d at 502503 (quoted source omitted). Of course, a defendant does not have the right to present evidence that is not relevant. Pittman, 174 Wis. 2d at 275, 496 N.W.2d at 83.
¶9. As Mr. Felton points out, under Wis. Stat. § 813.12(8)(a) a person may be punished only if he or she "knowingly violates" the injunction. The trial court ruled that the face of the injunction was plain and did not provide for it being lifted informally by the protected person. Further, the trial court pointed out that the injunction was also "explicit" that there was to be "no contact unless the petitioner consents in writing." Although, as Mr. Felton argues on appeal, this latter point does not directly address his contention that he thought his wife had arranged to have the injunction lifted-as opposed to consenting to its violation-the "in writing" clause supports the trial court's analysis that injunctions, by their tenor, cannot be modified informally and that Mr. Felton should have reasonably known that.
¶10. Under Wis. Stat. § 939.23(1), (2) the term "knowingly" in the criminal code "requires only that the actor believes that the specified fact exists." Although the state of mind encompassed by the concept of "knowing" is subjective and must be gleaned from an analysis of all the material circumstances, State v. Lossman, 118 Wis. 2d 526, 542-543, 348 N.W.2d 159, 167 (1984), the law has long recognized that the belief must be reasonable, State v. Preston, 34 Wis. 675, 685 (1874) (person acts "willfully" when, with "`reasonable knowledge and ability,'" he does something that he knows is "`contrary to his duty'") (quoted source omitted). As noted, the trial court had the text of the injunction before it (and we do not). Given that the injunction would not expire until November 7, 2003, and its declaration that the victim's consent to be contacted would not excuse contact unless that consent were in writing, we cannot say that the trial court either made an error of law or erroneously exercised its discretion in ruling that both Mr. Felton's state-of-mind evidence and what Mrs. Felton may have told Mr. Felton's mother in his absence were not admissible. Although the trial court did not reference Wis. Stat. Rule 904.03, which permits the exclusion of evidence when its "probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues," among other considerations, its balancing was "implicit" in its ruling on "relevance." See Pharr, 115 Wis. 2d at 344349, 340 N.W.2d at 502504. On our independent review of the record, the trial court's exclusion of the proffered evidence was within its discretion.

B. Adjournment.

¶11. As we have seen, the trial court denied Mr. Felton's last-minute oral motion to adjourn the trial. Whether to grant or deny a motion for an adjournment is, of course, within the trial court's discretion. Elam v. State, 50 Wis. 2d 383, 389-390, 184 N.W.2d 176, 180 (1971). "Generally, the court may consider whether the testimony of the absent witness is material, whether the moving party has been guilty of any neglect in endeavoring to procure the attendance of the witness, and whether there is a reasonable expectation that the witness can be located." Id., 50 Wis. 2d at 390, 184 N.W.2d at 180. The trial court's ruling was, in essence, based on the second of the three factors. As the trial court explained in its written decision denying Mr. Felton's motion for postconviction relief: "The defendant's diligence in attempting to procure the attendance of his witnesses was clearly lacking and was the basis upon which the court denied the request for adjournment." (Emphasis by trial court.) We agree. A defendant seeking an adjournment because his or her witnesses are not in court must show diligence in attempting to get them to court. Id., 50 Wis. 2d at 391-392, 184 N.W.2d at 181. Mr. Felton did not even attempt to contact his brother between the September 27 pretrial hearing and the October 15 trial. This is not acting with the requisite diligence. Accordingly, the trial court acted well within its discretion in denying the last-minute oral motion for an adjournment.

C. Effective assistance of counsel.

¶12. Every criminal defendant has a Sixth Amendment right to the effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 686 (1984), and a coterminous right under article I, section 7 of the Wisconsin Constitution, State v. Sanchez, 201 Wis. 2d 219, 226-236, 548 N.W.2d 69, 72-76 (1996). In order to establish a violation of this right, a defendant must prove two things: (1) that his or her lawyer's performance was deficient, and, if so, (2) that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also Sanchez, 201 Wis. 2d at 236, 548 N.W.2d at 76. In assessing a defendant's claim that his or her counsel was ineffective, we need not address both the deficient-performance and prejudice components if the defendant does not make a sufficient showing on one. Strickland, 466 U.S. at 697; Sanchez, 201 Wis. 2d at 236, 548 N.W.2d at 76. Our review of a trial court's resolution of an ineffective-assistance-of-counsel claim involves mixed questions of law and fact. State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990). The trial court's findings of fact will not be disturbed unless they are clearly erroneous. Ibid. The legal conclusions, however, whether the lawyer's performance was deficient and prejudicial are questions of law that we review de novo. Id., 153 Wis. 2d at 128, 449 N.W.2d at 848.
¶13. Mr. Felton's ineffective-assistance-of-counsel claim rests solely on his contention that his trial lawyer should have produced Mr. Felton's brother and mother for trial. Cf. State v. Flynn, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349-350 (Ct. App. 1994) (defendant who alleges that lawyer was ineffective must show with specificity what he or she claims the lawyer should have done). But, as the trial court pointed out in its oral decision denying the motion for an adjournment: "How do you expect [defense counsel] to contact [the brother], if you don't know where he is and how to contact him and he's your essential witness? He can only work with what he has." On our de novo review, we agree. Mr. Felton has not established that his lawyer's representation was deficient.

D. Interests of justice.

¶14. As a final catch-all, Mr. Felton repeats his arguments in the context of a contention that he should get a new trial in the interests of justice. See Wis. Stat. § 752.35. Insofar as his interests-of-justice contention asserts that the jury should have heard evidence that Mrs. Felton told him and his mother that Mrs. Felton "`had the restraining order taken off,'" it is without merit for the reasons discussed above. See Mentek v. State, 71 Wis. 2d 799, 809, 238 N.W.2d 752, 758 (1976) (larding a final catch-all plea for reversal with arguments that have already been rejected adds nothing). Further, as the trial court noted in its written decision, the jury did hear Mr. Felton's contention that his brother, and not he, was on the telephone with Mrs. Felton, and, moreover, Mr. Felton admitted in his testimony that he violated the injunction.
¶15. Mr. Felton told the jury that he had been out of town in Mississippi for five days when he returned home. "After I got back, my little brother was on the phone, and he told me who he was talking to." Mr. Felton's lawyer then asked who that was, and Mr. Felton responded: "Naticia Felton."
Q. Okay. And did he hand the phone over to you?
A. No.
Q. Did you say you wanted to talk to her?
A. No. I just asked him to ask her if I couldcan I get my daughter.
As the trial court pointed out, this indirect contact itself violated the domestic-abuse injunction. See Wis. Stat. § 813.12(4) ("A judge or circuit court commissioner may grant an injunction ordering the respondent ... to avoid contacting or causing any person [with exceptions not material here] to contact the petitioner.") (emphasis added). Although Mr. Felton testified that his brother was already on the telephone with Mrs. Felton when Mr. Felton arrived, the question he said he posed to his wife through his brother violated the statutory prohibition. Having admitted to a violation of the injunction, Mr. Felton is not entitled a new trial in the interests of justice.
By the Court.Judgment and order affirmed.
NOTES
[1] The injunction is not in the appellate record. It is the responsibility of appellate counsel to ensure that all matters necessary to a determination of the appeal are in the record. State Bank of Hartland v. Arndt, 129 Wis. 2d 411, 423, 385 N.W.2d 219, 225 (Ct. App. 1986). The injunction was, however, referred to by both the trial court and counsel. When the appellate record is incomplete in connection with an issue raised by the appellant, we assume that the missing material supports the trial court's ruling. See Duhame v. Duhame, 154 Wis. 2d 258, 269, 453 N.W.2d 149, 153 (Ct. App. 1989).