PER CURIAM.
¶1 A jury found Michael G. Donahue guilty of intentionally causing mental harm to a child, false imprisonment, and child neglect.[1] Donahue appeals his judgment of conviction and the order denying his motion for postconviction relief on grounds that trial counsel was ineffective for his failure to object to certain rebuttal evidence. We disagree. We also disagree that Donahue is entitled to a new trial in the interest of justice. We affirm.
¶2 The State alleged that when the Donahues lived on Summer Street in Genoa City in 2013, they routinely locked K in his bedroom for hours at a time or overnight, and denied him bathroom access. Donahue depicted the arrangement as having been done out of safety concerns because K sometimes left his room in the middle of the night; attempted to cut one of his sister's hair off; urinated on Donahue as he slept; hit, kicked, and hurt other family members; and once escaped from his second-story window and was found by his sisters in the kitchen. Donahue testified that a therapist recommended confining K to his room with a battery-operated egress alarm on the door and that the alarm, which would sound if K tried to leave the room was the only "lock" used. Others testified that the door had a physical lock that was "reversed" and could be opened only from the outside; and that the bedroom window may have been screwed or nailed shut.
¶3 Donahue testified at trial that he had removed the doorknob and lock from K's bedroom door before police searched the house. He claimed he then installed the lock on the door to a downstairs bedroom where Carrie temporarily slept while recovering from surgery, so as to prevent the children from gaining access to Carrie's postoperative supplies and medications. Donahue conceded that he did not mention switching the lock to police before trial. Donahue's father testified that K was kept locked inside his room and that the lock was "on wrong."
¶4 Prior to moving to Summer Street in early 2013, the Donahues lived in a house on Clover Road. On rebuttal, the State offered the testimony of a contractor hired to renovate the Clover Road house after the Donahues moved out. The contractor testified that a bedroom with boy's clothes in it reeked of urine, had feces smeared on the walls, had a window that was screwed shut, and, unlike other rooms in the house, was fitted with a lock on the door. Defense counsel did not object. The jury found Donahue guilty of three of the four charges.
¶5 Donahue filed for postconviction relief. He argued that trial counsel was ineffective for not objecting to the contractor's rebuttal testimony. Defense counsel testified that a part of the rationale for his and Donahue's joint decision to have Donahue testify was to discuss K's mental health history and the family history and dynamics, including events that occurred in 2012. Counsel also acknowledged that other defense witnesses testified about the family's history predating the 2013 charging time frame.
¶6 The circuit court concluded that although some of the rebuttal evidence was outside the charging dates, it was properly admitted to refute defense testimony that the lock on K's bedroom door on Summer Street was not reversed, the window was not screwed shut, and, except for the alarm set-up, K never was locked inside his bedroom during the relevant time period. The court ruled that Donahue failed to prove deficient performance or prejudice. Donahue appeals.
¶7 Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. State v. Sanchez , 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). We will not set aside the circuit court's factual findings about counsel's actions and the circumstances of the case unless those findings are clearly erroneous. Id. Whether counsel's performance fails to meet constitutional standards, however, is a question of law subject to de novo review. Id.
¶8 The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution so as to render the trial unfair and the verdict suspect. See Strickland v. Washington , 466 U.S. 668, 686 (1984). To prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, id. at 688, and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
¶9 Donahue contends defense counsel's failure to object to the contractor's testimony was both deficient and prejudicial because it allowed the jury to hear impermissible extrinsic evidence. Extrinsic evidence is testimony obtained by calling additional witnesses rather than by cross-examination. State v. Sonnenberg , 117 Wis. 2d 159, 168, 344 N.W.2d 95 (1984). "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility ... may not be proved by extrinsic evidence." WIS. STAT. § 906.08(2) (2015-16).[2] "Impeachment of a witness on the basis of collateral facts introduced by extrinsic testimony is forbidden." McClelland v. State , 84 Wis. 2d 145, 159, 267 N.W.2d 843 (1978). "A matter is collateral if the fact to which error is predicated could not be shown in evidence for any purpose independently of the contradiction." State v. Olson , 179 Wis. 2d 715, 724, 508 N.W.2d 616 (Ct. App. 1993).
¶10 We agree with the State that testimony about the presence of a lock, or its "reverse" or "wrong" position, on K's bedroom door and the condition of his bedrooms at both houses plainly were not collateral matters. While it may have impacted the Donahue's general credibility to a degree, that was not the main reason for the contractor's rebuttal testimony. To the contrary, the house on Clover Road is where the Donahues and K lived immediately before moving to Summer Street, which is where the false imprisonment, infliction of mental harm to, and neglect of, K occurred throughout 2013. The contractor's rebuttal testimony gave context to the essential elements of the charged offenses-especially of false imprisonment-and of material facts Donahue and other defense witnesses put into dispute. It also challenged Donahue's and other defense witness testimony that the family's treatment of K stemmed from concern. Indeed, the rebuttal evidence refuted Donahue's testimony that he never locked K in his room at either house, did not reverse the lock on K's bedroom door, and did not nail or screw the window shut. The rebuttal evidence was admissible.
¶11 Furthermore, the admission of the contractor's testimony was not constitutionally prejudicial. Donahue's own father, daughter, and stepdaughter testified about the "wrong" way in which the lock was installed on K's door, and that he was locked inside for hours on end without being allowed to use the nearby bathroom. Just as at the recently vacated Clover Road house, K's room on Summer Street smelled of urine and had feces smeared on the walls. Donahue's conviction for false imprisonment did not hinge on the contractor's testimony.
¶12 Likewise, his convictions for causing mental harm to a child and for child neglect were not dependent on the contractor's rebuttal testimony. We will not recite the abundant evidence from numerous witnesses over the nine-day trial that catalogued the Donahues' unspeakable cruelty to K. The postconviction court found that there was "strong evidence from a variety of sources" regarding Donahue's guilt, evidence the jury plainly evaluated because it acquitted him on one count. Donahue has not established prejudice.
¶13 We also reject Donahue's contention that presenting the rebuttal testimony without objection prevented the real controversy from being fully tried. We need not determine that a new trial likely would result in a different outcome. State v. Watkins , 2002 WI 101, ¶97, 255 Wis. 2d 265, 647 N.W.2d 244. As we are satisfied that the real controversy was fully and fairly tried, we decline to grant a new trial pursuant to our discretionary reversal authority under WIS. STAT. § 752.35.[3]
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Donahue and his wife, Carrie, charged as parties to a crime, were tried jointly. Both were found guilty of intentionally causing mental harm to a child, false imprisonment, and child neglect. The victim, K, is Donahue's son and Carrie's stepson. Carrie also was found guilty of physical abuse of a child. The jury acquitted Donahue of causing physical harm to a child.

All references to the Wisconsin Statutes are to the 2015-16 version unless noted.

As Donahue does not argue that Wis. Stat. § 752.35 's alternative prong-miscarriage of justice-applies, we do not address it.