STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Larry MOFFETT, Defendant-Appellant.

Supreme Court

*No. 86–1745–CR. Argued October 5, 1988.—Decided January 9, 1989.*

(Also reported in 433 N.W.2d 572.)

For the plaintiff-respondent-petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

SHIRLEY S. ABRAHAMSON, J.  This is a review of an unpublished decision of the court of appeals, filed July 2, 1987, reversing a judgment of conviction for attempted first degree murder and reversing an order denying a new trial of the circuit

court for Milwaukee county, Gary A. Gerlach, circuit judge.

The defendant, Larry Moffett, was convicted of attempted armed robbery, contrary to secs. 943.32(1)(b) and (2), and 939.32, Stats. 1985–86, and attempted first degree murder, contrary to secs. 940.01 and 939.32, Stats. 1985–86. The defendant did not challenge his conviction on the attempted robbery charge. He did, however, move for a new trial on the attempted first degree murder conviction. The circuit court denied the motion. The defendant then appealed to the court of appeals.

The same two issues presented to the court of appeals are presented to this court. First, did the circuit court err in failing to instruct the jury on the lesser included offense of endangering safety by conduct regardless of life? The court of appeals concluded that the circuit court had not erred. This court agrees with the court of appeals.

Second, did the circuit court err in concluding that defense counsel's admittedly deficient performance at trial did not prejudice the defendant? The court of appeals reversed the conviction for attempted first degree murder and remanded the case to the circuit court for a new trial, holding that the defendant had been prejudiced by defense counsel's admittedly deficient performance in failing to submit evidence of prior statements of a witness. We conclude that there was no prejudice. Accordingly we reverse the decision of the court of appeals and affirm the judgment of conviction.

I.

The facts adduced at trial are as follows. The events leading to the defendant's arrest took place

outside of Gerald's Tavern in Milwaukee at approximately 10:00 p.m. on April 24, 1985. At that time, Jerome Tysen, Amy Sprawls and Linda Hasslinger left Gerald's and walked across the street to Tysen's parked car.

At trial, Tysen testified that three men whom he was unable to identify were standing outside the bar and that two of them followed his party towards the car. Tysen unlocked the passenger doors for Sprawls and Hasslinger and was opening the driver's door when he was approached by one of the men. Tysen testified that the man pointed a gun at his waist and demanded that Tysen give him whatever he had. Tysen stated that at this time the second man was standing near the rear of the car.

Tysen told the armed man that he didn't have anything and tried to get into his car. The man then struck him on the back of his head. Tysen managed to get in the car, shut and lock the door, and start the engine when his window shattered and he felt a pain in his neck. Tysen had been hit in the neck by a .25 caliber bullet. He drove two or three blocks and flagged down a squad car.

Tysen remembered his passengers were screaming and testified that he was focusing on getting the key in the ignition. He was not looking at the armed man outside his window and did not know if the man standing near the rear of the car had moved. Tysen was unable to identify who was standing outside the window when it shattered or who fired the shot.

Hasslinger testified that she was sitting in the front passenger seat and saw the defendant walk up to Tysen, pointing a gun at Tysen's stomach. When she saw the gun, Hasslinger slid down under the dash. She testified that she was able to see through the driver's

window but not through the rear passenger window. She stated she saw the defendant hit Tysen twice on the head.

Hasslinger confirmed that Tysen entered the car immediately after being struck and that the window shattered as he started the car. She did not remember seeing anyone other than the defendant outside the car. The last person she saw at Tysen's window before the gun was fired was the defendant, gun in hand. Later that same evening, Hasslinger viewed the defendant and his brother, Antonio (Andy) Moffett, in a showup conducted by the police and was able to identify only the defendant.

Sprawls was sitting in the right rear seat. She testified that she saw someone walk up to Tysen at the driver's door after she and Hasslinger were in the car. From where she was seated, Sprawls could not see any higher than chest level and was therefore unable to see the faces of those standing outside the car. She testified that someone was pointing a gun at Tysen's stomach, that Tysen was arguing and that he pushed someone away before getting into the car. She could not identify the person holding the gun and could not say whether more than one person was involved in the argument.

Frederick (Ricky) Brown, a friend of the Moffett brothers, testified for the state. Brown was the third man outside Gerald's that evening with the defendant and his brother. Brown testified that from where he stood across the street he saw the defendant, the defendant's brother, and Tysen at the driver's side of Tysen's car. Although Brown testified that the Moffett brothers had their backs to him, Brown stated that the defendant did not point a gun at Tysen's stomach or hit Tysen in the stomach with a gun.

Before Tysen got into his car, Brown saw the defendant strike Tysen on the head with a dark object that appeared to Brown to be the back end of a gun or a night stick. Brown stated that, at this point, the defendant and Antonio were standing side by side, with Antonio standing to the defendant's left, nearer the front of the car.

Brown testified that, after Tysen had entered his car, the Moffett brothers were standing in the same positions and their backs were still to him. Brown could not see their hands. Brown testified that he turned to go back in the tavern and he heard a window shatter. Brown turned to look back and saw the defendant and Antonio in the same positions as before. He did not see the gun fire and he did not know who fired the gun.

Brown testified that he did not see a gun, or anything, in the defendant's hands. He further stated that he never saw anything resembling a gun in Antonio's hands. Brown denied telling anyone, including a Detective Lemke, that upon hearing the window break, he "saw Andy lift the gun."

Brown testified that, as he and the Moffett brothers drove away from the scene, the brothers were arguing and the defendant asked Antonio, "why did he [Antonio] do it?" On cross-examination, defense counsel paraphrased this statement as "Why did you (Antonio) shoot him?" Brown corrected the defense counsel and repeated that the defendant had said "Why did you do it?"

The report of the shooting was received on police radio at 10:10 p.m., and the police stopped Antonio and the defendant walking four blocks east of the scene of the crime. No weapon was found on their persons. The defendant and Antonio were arrested at

10:20 p.m., and their hands were swabbed to ascertain the presence of barium and antimony levels indicative of gunshot residue. The defendant's test showed a positive result on his right palm. Antonio's test did not reveal levels of barium and antimony consistent with the firing of a gun. The technician who administered the test testified at trial that there are a number of things a person can touch other than a gun that will produce a positive result.

Dr. Camp, head of the Trace Analysis Section of the State Crime Laboratory and the state's expert witness, testified that barium and antimony can be washed off completely or can simply abrade over time; that the test is not conclusive; that a negative result does not indisputably establish that a person has not fired a gun; that the test does not necessarily distinguish between the handling and firing of a gun; and that it it possible to get barium and antimony on one's hands by standing within one to two feet of a gun while it is fired (the "cloud theory").

The defendant was convicted of attempted armed robbery and attempted first degree murder. At an evidentiary hearing held on the defendant's post-conviction motion, trial defense counsel testified that he had unintentionally failed to submit evidence of prior statements made by Brown to the police that were inconsistent with Brown's trial testimony. Defense counsel argued that this evidence was crucial to the defense theory that Antonio, rather than the defendant, had fired the gun that injured Tysen. Defense counsel testified that he had intended to use the police report which contained these prior statements to impeach Brown's testimony at trial and to corroborate the defense theory.

The circuit court denied the defendant's motion, ruling that the defense counsel's omission amounted to deficient performance but not prejudicial error. The court of appeals, however, reversed the circuit court's denial, concluding that the omission was prejudicial error.

## II.

We turn first to the defendant's contention that the circuit court erred by failing to give the jury an instruction on the lesser included offense of endangering safety by conduct regardless of life. Endangering safety by conduct regardless of life is a lesser included offense of attempted first degree murder. *Hawthorne v. State,* 99 Wis. 2d 673, 682, 299 N.W.2d 866 (1981). To justify the submission of this instruction, there must be both reasonable grounds in the evidence for conviction on the lesser offense and acquittal on the greater offense. The evidence is to be reviewed in a light most favorable to the defendant. *Hawthorne, supra,* 99 Wis. 2d at 683–84.

If the evidence could reasonably support the finding that the defendant had no intent to kill, that is, that the defendant did not have the mental purpose to take the life of another human being, sec. 940.01(2), Stats., but that he engaged in imminently dangerous conduct evincing a depraved mind regardless of human life, the jury should have been given the instruction for the lesser included offense.

We agree with the court of appeals. There is no reasonable basis in this record to support an acquittal on the attempted first degree murder charge. The

defendant asserts that the record supports the inference that the shot was fired out of frustration or to scare Tysen. The evidence presented, however, established that the assailant fired at a vital part of Tysen's body from a short distance. We conclude, as did the circuit court and the court of appeals, that this evidence does not reasonably support the defense's suggestion that the shot was fired out of frustration or to frighten Tysen. We can find no reasonable basis to support an acquittal on the greater offense. We therefore conclude that the circuit court did not err in denying the defendant's request for an instruction for the lesser included offense.

## III.

The defendant bases his claim of ineffective assistance of counsel on the sixth and fourteenth amendments of the United States Constitution and on art. I, sec. 7 of the Wisconsin Constitution. A claim of ineffective assistance of counsel brought under the sixth amendment of the United States Constitution must meet the test articulated in *Strickland v. Washington,* 466 U.S. 688 (1984), and followed by this court in *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985), and *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986). Under *Strickland,* the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.

Both components of the *Strickland* test constitute mixed questions of law and fact. *Id.* at 698. This court will not reverse the circuit court's factual findings

unless they are clearly erroneous. Section 805.17(2), Stats 1985–86; *State v. Pitsch, supra* 124 Wis. 2d at 634. The questions of whether counsel's performance was deficient and whether the deficient performance prejudiced the defendant, thereby violating his federal constitutional right to effective counsel, are questions of law. This court decides questions of law independently, without deference to the conclusions of the court of appeals or the circuit court.

In this case the deficient performance consists primarily of defense counsel's failure to introduce a police report containing statements by Ricky Brown that are allegedly inconsistent with Brown's testimony at trial. The police report states that Brown told the police officers that "when he [Brown] heard the window break, he [Brown] saw [Antonio] lift the gun." The police report also quotes Brown as telling the police officers that Antonio commented to the defendant that "if it didn't work, then how come the gun went off when I [Antonio] fired it?" Defense counsel had intended to impeach Brown with these statements after Brown denied on cross-examination at trial that he told anyone, including the police officers, that after the window shattered he saw Andy lift the gun. Defense counsel also intended to use the statements to corroborate the defense's theory that the defendant did not fire the gun.

The circuit court concluded that defense counsel's failure to introduce Brown's prior statements was an unintentional oversight and was not the product of reasoned, deliberate defense strategy. The circuit court also found that defense counsel's representation fell below an objective standard of reasonableness, thus satisfying the first prong of the *Strickland* test.

Neither the state nor the defendant challenges this finding.

We turn to a consideration of the second prong of the *Strickland* test, namely whether "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." 466 U.S. 687. We conclude, under the facts of this case, that they were not.

Under the *Strickland* analysis, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. In *Strickland,* the Court said that it is "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." The defendant is not required, however, to show "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.

Although the United States Supreme Court speaks in terms of the defendant's showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, the Court rejects a simplistic "outcome-determinative standard," *id.* at 693–94. Rather, the focus is, according to the Court, on the reliability of the proceedings. Thus the Court said, "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* at 694.

We now apply the *Strickland* test to this case. The defendant argues that defense counsel's error had "a pervasive effect on the inferences to be drawn from the evidence" and that it "alter[ed] the entire evidentiary picture" in the case. *Strickland, supra,* 466 U.S.

at 695–96. The defendant attempted to show at trial that, after the defendant unsuccessfully attempted to rob Tysen at gunpoint and struck Tysen on the head with the gun, Antonio was in a position to and actually did grab the gun from the defendant's hand and shoot Tysen. The defense claims that Brown's previous statements, contained in the police report, were crucial to its theory that Antonio, rather than the defendant, fired the gun. Prior inconsistent statements are properly admissible as substantive evidence. *Vogel v. State,* 96 Wis. 2d 372, 385, 291 N.W.2d 838 (1980).

The court of appeals concluded that Brown's inconsistent statements went directly to the crux of the case and that the defendant ought to be allowed to present this crucial evidence to the finder of fact. The court of appeals concluded that the omission of this crucial evidence because of defense counsel's oversight jeopardizes the reliability of these proceedings and undermines confidence in its result.

We have examined the entire record, as *Strickland* mandates, 466 U.S. at 695, to determine the effect of the errors. The totality of the evidence, or "entire evidentiary picture" presented to the factfinder is important. In *Strickland,* the Supreme Court explains:

> Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

> one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695–696.

Upon placing the omitted police report and Brown's prior statements in the context of the entire evidentiary picture presented to the jury, we conclude that the defendant has not carried his burden under the *Strickland* rule. At trial, the jury heard extensive eyewitness and expert testimony concerning the events of April 24, 1985. The state's evidence against the defendant rested almost exclusively on circumstantial evidence. While the witnesses' testimony put the gun in the defendant's hand immediately before the shooting, no witness could identify who fired the gun. Moreover, only one witness's testimony put Antonio in a position where he might have fired the gun. Finally, the residue test supported the state's assertion that the defendant, not Antonio, fired the gun.

Brown's omitted statements are relatively unpersuasive when they are viewed in the context of the totality of the record. The omitted statements link Antonio to the gun. But at trial Brown denied he made any statement that Antonio had the gun. Defense counsel asked Brown at trial whether he had told the detectives that he saw Antonio lift the gun. Brown said no. Thus the jury was alerted to a possible conflict of statements by Brown. If the prior statement had been introduced in evidence, the jury might well have believed that the detective had not correctly set forth

356

Brown's conversation with him. Or the jury might have concluded that Brown could not have seen Antonio fire the gun but might have seen Antonio with the gun after the defendant fired it. Or the jury might have concluded from Brown's prior inconsistent statement alone, contrary to all of the other circumstantial evidence, that Antonio fired the gun. After reviewing the totality of the evidence, we are not persuaded the jury would have reasonably reached the third conclusion.

The test is whether defense counsel's errors undermine confidence in the reliability of the results. The question on review is whether there is a reasonable probability that a jury viewing the evidence untainted by counsel's errors would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 695. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695.

Reviewing the totality of the evidence in this case, we conclude that defense counsel's errors could have had only an isolated, trivial effect. We cannot conclude, as the defendant urges, that there is a reasonable probability, defining reasonable probability as "probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, that but for counsel's unprofessional errors, the result of the proceeding would have been different. While no witness saw who fired the gun, the omitted evidence is not the kind of evidence that, viewed in the totality of evidence, undermines confidence in the result. If the jury had been given the omitted evidence, we do not

believe there is a reasonable likelihood that the jury would have had a reasonable doubt about the defendant's responsibility for the shooting. The defendant has not made a showing that the conviction was rendered unreliable by a breakdown in the adversary process caused by the deficiencies in defense counsel's assistance.

Finally, the defendant urges this court to consider the ineffective counsel claim within the context of the Wisconsin Constitution and argues that our state constitution affords greater protections than the guarantees established under the federal Constitution as interpreted in *Strickland.* More specifically the defendant urges that this court apply *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985), to hold that the party with the benefit of the error (here, the state) should have the burden of proving that the error committed by counsel was not prejudicial.

We need not reach or discuss the state constitutional issue the defendant raises, because in this case we conclude that the *Dyess* harmless error test is satisfied.

For the reasons set forth we reverse the decision of the court of appeals and affirm the conviction for attempted first degree murder.

*By the Court.*—The decision of the court of appeals is reversed.