**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 22, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2182-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2012CF626

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RONALD LEE GILBERT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DENNIS R. CIMPL and STEPHANIE ROTHSTEIN, Judges. *Reversed and cause remanded with directions*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1 DONALD, J. Ronald Lee Gilbert appeals from a judgment of conviction following a jury trial for trafficking of a child, second-degree sexual assault of a child, and intentional child abuse. He also appeals from an order

denying relief after we reversed and remanded this case for an evidentiary hearing on ineffective assistance of counsel.[1]

¶2 We now reverse and remand for a new trial. As discussed below, we conclude that trial counsel was ineffective for failing to challenge inaccurate cell phone data evidence, making derogatory closing argument remarks, including referring to Gilbert as a "scumbag," and, to a lesser extent, failing to impeach the State's two key witnesses.

## BACKGROUND

¶3 The background facts were discussed in our previous decision remanding this case for an evidentiary hearing; therefore, we summarize the relevant facts below. *See State v. Gilbert* (*Gilbert I*), No. 2016AP1852-CR, unpublished slip op. ¶¶5-17 (WI App June 26, 2018).

¶4 In 2012, the State charged Gilbert with three counts: (1) trafficking of a child, relating to J.D.E., a fourteen year old; (2) second-degree sexual assault of J.D.E.; and (3) physical abuse of J.D.E.

¶5 The State also charged Brandon Pratchett with four felonies involving J.D.E. However, prior to trial, Pratchett entered into a plea agreement that reduced his overall sentencing exposure and required him to cooperate in the prosecution of Gilbert.

---

[1] The Honorable Dennis R. Cimpl presided over Gilbert's trial, conviction, and sentencing. The Honorable Stephanie Rothstein issued several postconviction orders. The issues Gilbert raises on appeal were decided by Judge Rothstein. We refer to Judge Cimpl as the trial court. We refer to Judge Rothstein as the postconviction court.

¶6 Gilbert's case was tried to a jury. At trial, the witnesses included J.D.E., Pratchett, Detective Dawn Jones, and Gilbert.

¶7 J.D.E. testified that on January 7, 2012, Gilbert picked her up in Racine and drove her to Milwaukee, where they had sex several times.

¶8 According to J.D.E., Gilbert also attempted to get her to engage in prostitution on January 7, 2012. This included driving J.D.E. to the Econo Lodge, where Gilbert and Pratchett discussed posting an ad on an online forum to facilitate prostitution dates with J.D.E. After spending approximately five minutes at the Econo Lodge, J.D.E. and Gilbert left. Later that night, they returned to the Econo Lodge a second time and Gilbert sold her to Pratchett for prostitution.

¶9 J.D.E. testified that was not the last time she saw Gilbert. Gilbert subsequently returned to the Econo Lodge, told her that she was leaving with him, and, after she tried to move out of the way, he punched her in the face.

¶10 Like J.D.E., Pratchett testified that Gilbert was at the Econo Lodge two times on January 7, 2012. The first time, Gilbert asked Pratchett to post a prostitution ad for J.D.E. The second time occurred late at night on January 7, 2012. At that time, Pratchett paid Gilbert $100 and gave him a piece of stereo equipment in exchange for J.D.E.

¶11 By contrast, Gilbert testified that he picked up J.D.E. in Racine, brought her to Pratchett's room at the Econo Lodge, and left without her. After that, he did not see her again. He denied having any sexual intercourse or physical contact with J.D.E. and denied that Pratchett paid him for J.D.E.

¶12 As we observed in our previous decision, based on the conflicting testimony, whether Gilbert returned to the Econo Lodge a second time on

January 7, 2012 was critical. After Gilbert testified, the State, in rebuttal, called Detective Jones who testified that cell phone data showed that Gilbert's cell phone was within 120 feet of the Econo Lodge at the time he allegedly sold J.D.E. to Pratchett. The State argued that this testimony proved that Gilbert lied when he said that he did not return to the Econo Lodge a second time on January 7, 2012.

¶13    The jury found Gilbert guilty of all three counts and Gilbert filed a motion for postconviction relief.

¶14    The postconviction court ordered an evidentiary hearing on the accuracy of the information presented to the jury regarding where Gilbert's cell phone was located, but denied the remainder of the motion.

¶15    At the hearing, the postconviction court heard testimony from an expert retained by Gilbert. The expert opined that the State's cell phone data evidence was misleading for a number of reasons, including that: (1) it is impossible to use historical cell phone records to place a phone within feet of a certain location and (2) the State's maps failed to account for the fact that a cell phone does not automatically connect to the closest tower, but rather the tower used depends on a variety of factors, such as day of the week, weather, heavy traffic, and special events. Testimony was also taken from another officer who created the cellular data maps that were used in Gilbert's case. The postconviction court denied relief.[2]

---

[2] Subsequently, Gilbert filed two supplemental postconviction motions raising additional issues. The postconviction court denied those claims without a hearing.

¶16 In his first appeal before this court, Gilbert contended he was deprived of effective assistance of counsel because trial counsel: (1) failed to challenge the admissibility of Jones' cell phone data testimony; (2) failed to obtain critical discovery before trial regarding the cell phone data; (3) failed to impeach J.D.E. and Pratchett with their prior inconsistent statements; (4) failed to strike a biased juror; and (5) made improper comments during closing argument. *See Gilbert I*, No. 2016AP1852-CR, ¶¶19, 36. We concluded that with the exception of the failure to strike a juror, Gilbert alleged sufficient facts to warrant an evidentiary hearing and, therefore, we affirmed the order in part, reversed in part, and remanded the matter for a *Machner* hearing.[3] *Id.*, ¶40.

¶17 On August 7, 2014, the *Machner* hearing took place and Gilbert's trial attorney testified. Based on the testimony, Gilbert conceded that trial counsel had obtained and reviewed the relevant discovery regarding the cell phone data, but renewed his challenge to the remainder of the claims. The postconviction court found that trial counsel's performance was reasonable and, as a result, his performance did not have a cumulative prejudicial effect on Gilbert's trial. This appeal follows.

## DISCUSSION

¶18 The United States Constitution and the Wisconsin Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. CONST. amends. VI, XIV; WIS. CONST. art. I, § 7. A prudent lawyer must be

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

"skilled and versed" in criminal law. *State v. Felton*, 110 Wis. 2d 485, 500-01, 329 N.W.2d 161 (1983) (citation omitted).

¶19 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶20 A claim of ineffective assistance presents a mixed question of law and fact. *State v. Gutierrez*, 2020 WI 52, ¶19, 391 Wis. 2d 799, 943 N.W.2d 870. We will uphold the circuit court's finding of fact unless they are clearly erroneous. *Id.* Whether trial counsel's performance was deficient and prejudicial is a question of law that we review independently. *Id.*

¶21 As discussed below, we conclude that trial counsel was ineffective for failing to challenge the inaccurate cell phone data evidence, making derogatory remarks about Gilbert in closing argument, including referring to him as a "scumbag," and to a lesser extent, failing to impeach the State's two key witnesses with various inconsistencies.

*Deficient Performance*

I.     **Cell Phone Data Evidence**

¶22 To prove deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

¶23 In this case, the only objective evidence the State presented at trial was Jones' testimony that Gilbert's cell phone was within 120 feet of the Econo

Lodge around midnight on January 7, 2012—the time that J.D.E. was allegedly sold to Pratchett. Trial counsel did not object or cross-examine Jones regarding this conclusion.

¶24 In closing argument, the State asserted that Gilbert lied to the jury when he said that he never returned to the Econo Lodge. In support, the State emphasized that "[a]t 11:58, 11:59 p.m. on the 7th Mr. Gilbert's phone is lighting up right next to the Econolodge [sic], within 100 feet or so we know, but given what we know from all of the testimony we heard he was right in the parking lot." Moreover, in rebuttal, the State reminded the jury "[t]his is a case we knew from the beginning does rest on the credibility of the witnesses," and "*one thing to remember with the phone maps is they only react when a phone is actively being used.... [T]here are a couple select moments when those phones were in action that were very telling*[.]" (Emphasis added.)

¶25 Gilbert contends that Jones' testimony placing Gilbert within 120 feet of the Econo Lodge was "false" and trial counsel performed deficiently because he did *nothing* to challenge this testimony.[4]

¶26 The State concedes that the testimony that Gilbert's cell phone was within 120 feet of the Econo Lodge was inaccurate. The State, however, argues

---

[4] Gilbert also argues that the State failed to provide notice of Jones as an expert and Jones' testimony "crossed the line separating lay testimony from expert testimony[.]" The State responds that "[w]hether Jones, as a lay witness rather than as an expert, could testify to the location of Gilbert's phone presented an unsettled legal question in 2012 when Gilbert's case was tried." Because we conclude that trial counsel performed deficiently in this case by failing to challenge Jones' testimony based on its inaccuracy, we do not address whether trial counsel should have also objected to the testimony on additional grounds. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

that the testimony at the ***Machner*** hearing establishes that trial counsel did not perform deficiently. We disagree.

¶27    Trial counsel's claim that an action was strategic does not insulate review of the reasonableness of that trial strategy. *See **State v. Coleman***, 2015 WI App 38, ¶27, 362 Wis. 2d 447, 865 N.W.2d 190. "Trial counsel's decisions must be based upon facts and law upon which an ordinarily prudent lawyer would have then relied." ***Felton***, 110 Wis. 2d at 503.

¶28    At the ***Machner*** hearing, trial counsel initially testified that he did not need to challenge the cell phone data testimony because Gilbert stated "he wasn't there" and "[i]t wasn't his phone[.]" This reasoning, however, is flawed. Prior to Jones' testimony that the phone was within 120 feet of the Econo Lodge, Gilbert told the jury that the phone was his.

¶29    After being confronted with the fact that Gilbert testified that the phone was his, trial counsel offered a slight variation of this reasoning—that he did not object because the phone was not in Gilbert's *possession*. That this was trial counsel's strategy, however, is not supported by the record. Trial counsel did not seek to elicit from Gilbert any testimony that the phone was out of his possession during the time period at issue. Nor did trial counsel make this point to the jury in closing argument.

¶30    In addition, trial counsel admitted that he recognized Jones had testified inaccurately about the phone being within 120 feet of the Econo Lodge, but decided to let the inaccurate information stand. Trial counsel stated that correcting the testimony "would allow the assistant district attorney to rehabilitate the witness because obviously it's not 120 miles, nor is it 120 feet. It's 120 degrees." Trial counsel did not explain why allowing the jury to hear

8

inaccurate information that Gilbert's phone was within 120 feet of the Econo Lodge at the time he allegedly sold J.D.E. to Pratchett would have helped Gilbert's defense. Nor are we able to discern any reasonable strategic reason. This testimony directly contradicted Gilbert's testimony that he did not return to the Econo Lodge.

¶31    The State notes that trial counsel testified it was not his general practice to hire an expert and that prior to trial he had no reason to question the accuracy of the cell phone data and maps. However, trial counsel admitted that in 2012 the defense bar was skeptical of cell phone location evidence. Trial counsel testified that "[a]t that time, the State was trying to use that technology to pinpoint persons in a certain location. We all knew that just wasn't gonna work." Further, even if it was reasonable not to hire an expert, that does not excuse trial counsel's failure to object to Jones' inaccurate testimony or otherwise seek to attack it through cross-examination.

¶32    Therefore, we are unable to discern a reasonable strategic reason for trial counsel's failure to challenge Jones' inaccurate testimony that Gilbert's phone was within 120 feet of the Econo Lodge.

## II.    Prior Inconsistent Statements

¶33    The failure to impeach a witness with a prior statement may constitute deficient performance. *See State v. Moffett*, 147 Wis. 2d 343, 353, 433 N.W.2d 572 (1989).

¶34    Gilbert argues that trial counsel was deficient for failing to impeach J.D.E. with her "internally inconsistent statements" to the police, including that: (1) J.D.E. initially told the police that she was forced to have sexual relations with

9

and was prostituted by the occupant of the hotel room (Pratchett); (2) in J.D.E.'s second statement she stated she had sex with Pratchett once, but in her fourth statement she said she had sex with Pratchett four times; (3) it was not until J.D.E.'s third statement to the police that she said Gilbert returned to the Econo Lodge to beat her; and (4) J.D.E. did not describe any injury to the police.[5]

¶35    Similarly, Gilbert argues that trial counsel was deficient for failing to impeach Pratchett with several of his prior statements to the police, including that: (1) Pratchett would do "anything" to avoid "going down for this"; (2) J.D.E. was a "liar" and "was going to do this to someone else"; (3) Pratchett twice denied to the police that Gilbert returned to the Econo Lodge and did not recall Gilbert's return until after he was asked if he prevented Gilbert from assaulting J.D.E.; and (4) that an amplifier found in Gilbert's car was not the one that Pratchett allegedly gave to Gilbert.  In addition, Gilbert states that Pratchett's prior statements to the police also contradicted several of J.D.E.'s claims including that Pratchett had sex with her.

¶36    At the *Machner* hearing, trial counsel testified that his strategy was to argue that the conflicting statements of the witnesses created a reasonable doubt.  Yet, trial counsel did not point out *any* of the above conflicting statements to the jury.  As Gilbert asserts, in the absence of any of the above conflicting statements, the jury was presented with an "unblemished narrative" from Pratchett and J.D.E. and did not hear information directly relevant to their credibility.

---

[5] The State observes that Gilbert did not specifically ask trial counsel at the *Machner* hearing about J.D.E.'s absence of injuries or her conflicting statements about whether she had sex with Pratchett.  The State argues that these points are forfeited.  *See State v. Elm*, 201 Wis. 2d 452, 463, 549 N.W.2d 471 (Ct. App. 1996).  We agree with the State and do not consider these statements in our conclusion that trial counsel performed deficiently.

¶37    Trial counsel also testified that he did not believe it was necessary to highlight Pratchett's prior inconsistent statements because Pratchett had admitted his involvement and accepted the State's plea agreement.[6]  However, Pratchett's prior inconsistent statements would have revealed to the jury how Pratchett's version of events evolved.  Further, at trial, Pratchett suggested that he provided information regarding Gilbert because he felt "guilty" and "wanted to do what was right … before the deal even came …."  Pratchett's willingness to do "anything" to avoid "going down for this" when speaking to the police would have contradicted this testimony.

¶38    In addition, trial counsel stated he did not address the inconsistencies related to the altercation because the allegations were "so despicable" and the jury was "cringing about this whole incident[.]"  Similarly, trial counsel testified that he did not cross-examine Pratchett regarding the amplifier because he did not want to raise emotions with the jury by highlighting that "the young lady was exchanged for an amplifier[.]"  However, "[e]ven distasteful facts favorable to the defense should be discussed, in a professional manner, if effective assistance of counsel is to be provided."  *Coleman*, 362 Wis. 2d 447, ¶¶38-39 (finding trial counsel's decision to decline to question a sexual assault victim about a prior

---

[6] The State also argues that using Pratchett's inconsistent statements would have also opened the door to prior consistent statements from Pratchett.  We first observe that trial counsel did not offer this strategy at the *Machner* hearing.  Moreover, the State had already introduced selective pre-trial audio recorded statements from Pratchett; therefore, it was unreasonable for trial counsel to fail to also do so.

inconsistent statement because he believed it distasteful did not constitute a valid strategic reason).[7]

¶38    Although some of the inconsistencies Gilbert identifies are minor, trial counsel did not call any witnesses in support of Gilbert and relied exclusively on cross-examination at trial.  Thus, the credibility of the State's witnesses was critical and we do not find that trial counsel had a reasonable strategic reason for failing to impeach J.D.E. and Pratchett.  *See id.*, ¶39.

### III.    Closing Argument

¶40    When assessing defense counsel's decision to make certain remarks in closing argument, we examine whether counsel took a "reasonable tactical approach under the circumstances."  ***State v. Gordon***, 2003 WI 69, ¶26, 262 Wis. 2d 380, 663 N.W.2d 765.

¶41    Here, during closing argument, trial counsel stated that this case turned on credibility, and that none of the witnesses, including Gilbert—his own client—were believable.  He stated to the jury that, "morality is what's missing here.  There's no good guys."  Trial counsel then stated:

> In this [c]ountry, you know, we would rather—as bad as it may sound, it's true—let some scumbags go free because we can't find that person guilty if we don't have enough evidence.  Like I said before, this case smells like—I won't use the word, but it smells.  But does it meet

---

[7]  ***State v. Coleman***, 2015 WI App 38, 362 Wis. 2d 447, 865 N.W.2d 190, which granted a new trial due to ineffective assistance of counsel, involved the same trial attorney as in this case.

the criteria that's necessary to find this person guilty in a court of law, innocent or guilty?[8]

¶42    Subsequently, trial counsel likened Gilbert to O.J. Simpson. Trial counsel stated:

> Remember the case a while back of a fellow named O.J. Simpson? He was convicted of crimes—I don't mean convicted, he was found not guilty. And everybody was saying, oh, man, and everybody got mad at the jurors. And what did the jurors say? We didn't have enough, the state didn't convince us. It was a big cost to the government probably to this day at that particular time, and you know what happened, [O.J.] proved the state wrong in that respect.
>
> Jump back five years later, and the scumbag, the jerk went to a hotel in Las Vegas and did something stupid, drank, and got thrown in the pokey. He didn't get anything for killing those [] people. But the verdict isn't do this, do that, it means is there sufficient evidence. Their verdict means there wasn't enough, but these people tend to come back.

¶43    Gilbert argues that trial counsel's remarks "amounted to an improper concession of guilt and abdicated trial counsel's role in the adversarial process[.]" According to Gilbert, trial counsel's remarks essentially conveyed to the jury that: "my client may be guilty, and he's probably lying, and he's certainly a scumbag, but you should let him go."

¶44    In response, the State asserts that trial counsel did not concede Gilbert's guilt and pursued a reasonable defense strategy. The State argues that

---

[8] The State argues that the postconviction court correctly determined that trial counsel's use of the word "scumbags" was not a specific reference to Gilbert. We disagree. As we found in our previous decision, the record does not support this conclusion. *See State v. Gilbert* (*Gilbert I*), No. 2016AP1852-CR, unpublished slip op. ¶37 (WI App June 26, 2018). The jury could reasonably believe that trial counsel was referring to Gilbert.

trial counsel would have lost credibility with the jury if he presented Gilbert "as a law-abiding, naïve individual."

¶45    We disagree that trial counsel acted reasonably in this case. Although trial counsel did not expressly state that Gilbert was guilty, such a message can be inferred from his remarks.

¶46    Moreover, there was no reasonable strategic reason to suggest that Gilbert lacked credibility, to refer to Gilbert as a scumbag, or liken him to O.J. Simpson. These remarks are inflammatory and do not support or advocate for a "not guilty" finding. Trial counsel could have simply argued that the State's witnesses lacked credibility or that the State failed to establish beyond a reasonable doubt that Gilbert was guilty. Thus, we are unable to discern a reasonable strategic reason for trial counsel's remarks in this case.

### *Prejudice*

¶47    To establish prejudice, Gilbert must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Thiel*, 2003 WI 111, ¶20, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶48    When a court finds multiple deficiencies, "it need not rely on the prejudicial effect of a single deficiency if, taken together, the deficiencies establish cumulative prejudice." *Id.*, ¶59. "Just as a single mistake in an attorney's otherwise commendable representation may be so serious as to impugn the integrity of a proceeding, the cumulative effect of several deficient acts or

omissions may, in certain instances, also undermine a reviewing court's confidence in the outcome of a proceeding." *Id.*, ¶60.

¶49    It is undisputed that this case hinged on credibility. While trial counsel's failure to impeach the State's key witnesses may not have been prejudicial standing alone, this failure coupled with the failure to challenge the cell phone data evidence and trial counsel's closing argument remarks undermines our confidence in Gilbert's conviction.

¶50    First, the only objective evidence presented at trial was Jones' inaccurate testimony that Gilbert's cell phone was within 120 feet of the Econo Lodge at the time he was alleged to have sold J.D.E. to Pratchett. In the absence of a challenge to this testimony, the only permissible inference remaining was that Gilbert lied on the stand and he had in fact returned to the Econo Lodge a second time. Thus, trial counsel's failure to challenge the inaccurate cell phone data evidence damaged Gilbert's credibility and likely artificially bolstered the State's version of events.

¶51    Second, trial counsel had the opportunity to present impeachment evidence against the State's two key witnesses, J.D.E. and Pratchett, but failed to do so. While some of the discrepancies are minor, exposing the inconsistent statements would have cast doubt on their credibility. Trial counsel's failure to impeach J.D.E. and Pratchett prevented the jury from hearing important information relevant to determining credibility.

¶52    Finally, trial counsel's remarks in closing argument, including referring to Gilbert as a "scumbag" and likening him to O.J. Simpson, once again damaged Gilbert's credibility.

¶53 Therefore, when taking into consideration all of trial counsel's deficiencies in this case, we conclude that there is a reasonable probability that the results of the proceeding would have been different but for trial counsel's deficient performance. Accordingly, we reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.