**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 21, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2019AP2111**

Cir. Ct. No. **2015CF5190**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DELANO MAURICE WADE,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Delano Maurice Wade, *pro se*, appeals from an order of the circuit court denying his WIS. STAT. § 974.06 (2019-20)[1] motion. Wade contends that trial counsel and postconviction/appellate counsel were ineffective in multiple ways. We conclude that Wade's claims lack merit. Therefore, we affirm.

## BACKGROUND

¶2 This is Wade's second appeal for postconviction relief. In 2016, Wade was convicted at trial of second-degree sexual assault and false imprisonment, both with a domestic abuse enhancer. As set forth in detail in our previous decision, Wade was living with his girlfriend, A.C., in her apartment. A.C. testified that on November 25, 2015, Wade returned home around 2:00 a.m. and accused A.C. of spending too much money with his food stamp card. Wade started kicking A.C. and when she ran to the door to leave, he grabbed her and said she was not going anywhere. Subsequently, Wade stomped on A.C., kicked her, burned her with cigarettes, and threw various things at her, including a liquor bottle and a candle holder, which was full of cigarette butts.

¶3 Wade told A.C. to go to their bedroom and lie on the bed, which she did. In the bedroom, Wade grabbed her by the hair and neck and said that he would break her jaw if she did not perform penis-to-mouth sex on him and "swallow everything." Wade then put his penis in A.C.'s mouth. Afterwards, when A.C. went to brush her teeth, Wade stood in the bathroom and told her multiple times that she was not going anywhere.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4     Wade and A.C. left the house later that day to go to the grocery store. On the way there, Wade drove A.C. around and asked men if they would "purchase [A.C.] for sex" because Wade claimed that she owed him money. At the grocery store, while Wade was distracted by his cell phone, A.C. started signaling to other customers to call 911. After paying for the groceries, Wade and A.C. got into Wade's car. A crowd of customers and a loss prevention officer followed Wade and A.C. outside.

¶5     Two customers stopped Wade's car and asked, "Are you okay?" Wade responded that he was fine and "Why would you ask?" The customers said that a lot of people were worried about A.C. In response, Wade started to drive away, and A.C. opened her car door and "jumped out [of] the car." An ambulance arrived and took A.C. to a hospital, where police interviewed her and photographed her injuries. A doctor also obtained a history from A.C. regarding the assault and examined her.

¶6     Police escorted A.C. back to her apartment, and they searched it with her consent and took photographs. Police photographed the candle holder that Wade threw at A.C., which was laying on the floor with cigarette butts nearby. Police also photographed the liquor bottle that A.C. said Wade used to hit her.

¶7     On direct appeal, Wade argued that the circuit court erred in: (1) overruling the defense's hearsay objections to a police officer's testimony describing what A.C. said about the incident and A.C.'s statements in a domestic violence supplemental form, and (2) discussing a jury question with trial counsel while Wade was not present. This court affirmed, concluding that Wade had forfeited his claims and that any alleged errors were harmless. *See State v. Wade*,

No. 2017AP1021-CR, unpublished slip op. ¶¶1-2 (WI App June 26, 2018). Wade's petition for review was denied.

¶8    In 2019, Wade, *pro se*, filed the WIS. STAT. § 974.06 motion underlying the instant appeal.   The motion alleged that trial counsel and postconviction/appellate counsel were ineffective in multiple ways.   The circuit court denied the motion without a hearing because it found that Wade did not prove that the alleged errors were prejudicial and that some of the claims had been raised and addressed in Wade's previous appeal.   Wade also filed a motion for reconsideration, which the circuit court denied.

¶9    Wade filed a notice of appeal from the order denying his WIS. STAT. § 974.06 motion.  Additional relevant facts are discussed below.

## DISCUSSION

¶10    On appeal, Wade renews his arguments that trial counsel and postconviction/appellate counsel were ineffective.  We first address the applicable legal standard and principles.   We then address each of Wade's specific arguments.

### I.    Legal Principles

¶11    WISCONSIN STAT. § 974.06 provides a mechanism for prisoners to raise constitutional claims after the time for a direct appeal has expired.  When, as here, a defendant seeks relief under § 974.06 following a prior appeal, the motion must establish a "sufficient reason" for failing to previously raise any issues that could have been raised in the earlier proceedings. ***State v. Escalona-Naranjo***, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994).  A claim of ineffective assistance of counsel may present a "sufficient reason" to overcome the procedural bar. *See*

4

*State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996).

¶12    To prevail on a claim of ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the court concludes that the defendant has not proven one prong of this test, it need not address the other. *Id.* at 697.

¶13    A circuit court is required to hold an evidentiary hearing on a motion only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a defendant's motion has alleged sufficient material facts entitling the defendant to relief is a question of law that we review *de novo*. *Id.*, ¶9. If the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* We review this decision under the deferential erroneous exercise of discretion standard. *Id.*

II.    **Ineffective Assistance of Trial Counsel**

A.  **Wade's statements to the investigating detective**

¶14    Wade first argues that trial counsel was ineffective for failing to call the investigating detective, Jonathon Mejias-Rivera, to testify regarding statements

Wade made to him. According to Wade, he told Detective Mejias-Rivera that A.C. framed him for the assaults to put him in jail so that she and her family members could steal his belongings from their apartment.[2] However, this argument fails because the proposed testimony would not have been admissible at trial.

¶15 "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial[,] … offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). Hearsay testimony is inadmissible at trial unless permitted by some other rule or statute. WIS. STAT. § 908.02.

¶16 As relevant here, a defendant's own out-of-court statements are inadmissible hearsay when they are offered as evidence by the defendant. *See State v. Ziebart*, 2003 WI App 258, ¶8 n.4, 268 Wis. 2d 468, 673 N.W.2d 369. Thus, Wade's statements to Detective Mejias-Rivera that A.C. had framed him for the assaults would have been inadmissible hearsay. An attorney cannot be ineffective for failing to make a meritless argument. *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments.").

### B. A.C.'s prior inconsistent statements

¶17 Wade next argues that trial counsel was ineffective for failing to impeach A.C. with her initial statement to the police that Wade took her house keys and cell phone.

---

[2] We note that Wade does not assert that trial counsel was ineffective for advising him not to testify.

¶18 We agree with the State that this argument fails in three respects. First, trial counsel explored A.C.'s inconsistent statements at trial regarding her cell phone. During trial, A.C. initially testified that she "lost" her cell phone before she arrived home the night of the assaults. On cross-examination, trial counsel questioned A.C. about her conversation with a 911 operator at the grocery store. A.C. denied telling the 911 operator that her phone had been "stolen" and maintained that she had "lost" her phone. Subsequently, trial counsel played the 911 call for the jury and the jury heard A.C. telling the 911 operator that her cell phone had been "stolen." Thus, the jury heard that A.C. had made inconsistent statements regarding her cell phone.

¶19 Second, A.C. provided a possible explanation for her initial statement to the police that Wade took her house keys and cell phone. During cross-examination, trial counsel asked A.C. if she recalled telling the police that Wade took her house keys and cell phone. A.C. denied making this statement. However, A.C. stated that she did tell the police that Wade "hid [her] house phone" on the night of the assaults.

¶20 Accordingly, in light of A.C.'s explanation, it was reasonable for trial counsel not to further explore A.C.'s statement that Wade took her cell phone. A.C.'s testimony suggests that the statement in the police report that Wade took her cell phone might be attributed to a typographical error or a miscommunication about a cell phone versus a house phone. Thus, impeaching A.C. with the police report would not have hurt her credibility, and in fact, might even have been detrimental to Wade's defense as it would emphasize to the jury that Wade hid A.C.'s phone in order to better enable him to assault her.

¶21 Third, even if trial counsel's performance was deficient, Wade has failed to establish that this minor error prejudiced him. *See Strickland*, 466 U.S. at 687. As we concluded in Wade's direct appeal, "the State presented a strong case[.]" *See Wade*, No. 2017AP1021-CR, ¶45. At trial, the State introduced testimony, photographs, and medical records regarding A.C.'s injuries. The jury also heard that police located a liquor bottle and a candle holder with nearby cigarette butts in A.C.'s apartment. This corroborated A.C.'s testimony that Wade had hit her with a liquor bottle and threw a candle holder containing cigarette butts at her.

¶22 In addition, A.C.'s behavior after the assaults supports her testimony. At trial, the grocery store loss prevention officer testified that A.C. signaled for customers and employees to help her or call the police. He also testified that after several customers confronted Wade, Wade began to drive away, and A.C. "rolled out" of the car and sprinted into the store. According to the loss prevention officer, A.C. looked "extremely frightened." Further, A.C. testified that two days after the assault, she quit her job and moved to Florida, leaving most of her belongings in Milwaukee. She said she moved to get away from Wade.

¶23 Therefore, we conclude that there is not a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See State v. Moffett*, 147 Wis. 2d 343, 357, 433 N.W.2d 572 (1989).

**C. A.C.'s cigarette burn**

¶24 Wade argues that trial counsel was ineffective for failing to: (1) object to, and contest, any testimony regarding A.C. being burned with a cigarette; (2) object to A.C. revealing the mark at trial because there was not any diagnosis by doctors or any photos of the mark taken by officers; and

(3) adequately cross-examine the testifying doctor and A.C. to establish that A.C. was not treated or diagnosed with any burns at the hospital.

¶25     As to Wade's first two arguments, the arguments are not developed and Wade does not cite any legal authority to support them.  He merely states that trial counsel should have objected to the testimony because there was no evidence other than A.C.'s testimony that she was treated for a burn.  We will not develop arguments for parties.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶26     Moreover, any potential issues related to the diagnosis, the absence of documented treatment, or the absence of a photograph of the burn mark goes to the weight of the evidence, not the admissibility.  *See State v. Giacomantonio*, 2016 WI App 62, ¶24, 371 Wis. 2d 452, 885 N.W.2d 394 (concluding that the defendant's arguments that the evidence was fabricated went to the weight of the evidence, not the admissibility).  The credibility of witnesses and the weight to be accorded to their testimony are matters for the jury to decide.  *See State v. Perkins*, 2004 WI App 213, ¶15, 277 Wis. 2d 243, 689 N.W.2d 684.

¶27     In addition, A.C.'s testimony about the burn mark was admissible.  First, at trial, A.C. testified that Wade had "burned [her] with cigarettes."  She also testified that she had a scar on her left arm from a cigarette burn that Wade gave to her on the night of the assaults.  A.C. then showed the scar to the prosecutor and defense counsel at trial.  Whether Wade gave A.C. a cigarette burn resulting in a mark on her arm is a matter within her personal knowledge.  *See* WIS. STAT. § 906.02 (providing that a witness may testify about matters within his or her personal knowledge).

¶28    Second, whether Wade burned A.C. with a cigarette was relevant to whether Wade falsely imprisoned A.C. and whether their oral sex was consensual. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. To prove sexual assault, the State had to show that Wade had sexual intercourse with A.C. without consent by use or threat of force or violence. *See* WIS. STAT. § 940.225(2)(a). To prove false imprisonment, the State needed to establish that Wade intentionally confined or restrained A.C. without her consent. *See* WIS. STAT. § 940.30. Thus, whether Wade burned A.C. with a cigarette was relevant to the consent element of each charge, and thus, admissible. WIS. STAT. § 904.02 (stating that all relevant evidence is admissible, unless otherwise provided).

¶29    Third, we note that at trial, the doctor specifically testified that he saw "one burn mark on [A.C.'s] left arm that was consistent with a cigarette burn[.]" In addition, while not listed as a "primary diagnosis," A.C.'s medical records indicated that she had a second-degree burn on her left upper arm. Accordingly, the doctor's testimony and the medical records corroborated A.C.'s testimony further establishing that Wade's argument is without merit.

¶30    Finally, addressing Wade's argument that trial counsel was ineffective in cross-examining A.C. and the doctor about the cigarette burn, we conclude that he has not sufficiently pled his claim. We note that Wade's WIS. STAT. § 974.06 motion does not sufficiently explain what questions trial counsel should have asked the examining doctor and A.C. or how the questions would have altered the outcome of the proceeding. *See State v. Prescott*, 2012 WI App 136, ¶11, 345 Wis. 2d 313, 825 N.W.2d 515 ("A defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity

what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding." (citation omitted)). Nor did Wade allege objective facts regarding what the doctor or A.C. would have said. *See State v. Arredondo*, 2004 WI App 7, ¶40, 269 Wis. 2d 369, 674 N.W.2d 647 (noting that if a defendant argues that counsel was deficient for failing to present testimony, he "must allege with specificity what the particular witness would have said if called to testify").[3] Therefore, for all of the reasons above, we conclude that Wade has not proven that trial counsel performed deficiently regarding the cigarette burn.

### D. Child visitation testimony

¶31 On cross-examination, trial counsel asked A.C. how Wade came to live with her. A.C. responded that Wade was "trying to get his kids back" and was "trying to get his home visits for his kids at [A.C.'s] apartment." Subsequently, the State inquired "[w]ho had [Wade]'s kids" and A.C. responded "[a] social worker." The State also elicited testimony that Wade had supervised visits and that A.C. was not present at the apartment during these visits.

¶32 Wade contends that trial counsel was ineffective for asking an open-ended question and failing to object when the State further explored this issue. We reject this argument and conclude that trial counsel was neither deficient, nor was Wade prejudiced. *See Strickland*, 466 U.S. at 687.

---

[3] In his reply brief to this court, Wade attempts to further develop his claims. However, a defendant must allege facts, which if true, would entitle him to relief "within the four corners" of the motion. *State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433. Accordingly, our review is limited to the allegations contained in Wade's WIS. STAT. § 974.06 motion and we do not consider additional arguments contained in a brief on appeal, much less arguments raised for the first time in a reply brief. *Allen*, 274 Wis. 2d 568, ¶27; *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief.").

¶33     Wade does not allege that A.C.'s response to trial counsel's question was predictable based on, for example, information Wade provided to trial counsel or the police reports.  Accordingly, trial counsel cannot be faulted for failing to anticipate A.C.'s response.  *See* **State v. Johnson**, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990) ("Review of counsel's performance gives great deference to the attorney and every effort is made to avoid determinations of ineffectiveness based on hindsight.  Rather, the case is reviewed from counsel's perspective at the time of trial[.]").  In addition, the State argues, and we agree, that the child visitation testimony that was elicited during cross-examination and the State's follow-up can be construed as putting Wade "in a positive light by showing that he was fighting for his children and trying to be a good parent."

¶34     In any event, even if trial counsel performed deficiently, Wade has failed to establish that he was prejudiced.  The visitation testimony was a small portion of the trial, and was not referenced during closing argument.  Finally, as discussed in detail above and noted in this court's earlier decision on Wade's direct appeal, the State had a strong case and there is not a reasonable probability that the outcome of the trial would have been different if the visitation testimony was not admitted at trial.

### E. Open-ended question that resulted in a stricken response about "dealing"

¶35     When exploring A.C.'s relationship with Wade, trial counsel asked A.C. how their relationship issues started.  A.C. responded by saying that Wade "was bringing certain people over and animals into my apartment that weren't supposed to be there" and that Wade "was dealing certain things out of my house that I … didn't really approve of."

¶36     Wade argues that trial counsel was ineffective for asking an open-ended question that led to A.C. mentioning Wade's "dealing." We disagree. The record reflects that the prosecutor had counseled A.C. not to testify about Wade's heroin dealing. As a result, trial counsel indicated that he was surprised by A.C.'s reference to dealing and had expected, based on the police reports, that A.C. would testify that there was an argument over a text message on her phone. Thus, trial counsel cannot be faulted for the fact that his open-ended question resulted in A.C. mentioning Wade's dealing. *See Johnson*, 153 Wis. 2d at 127.

¶37     Moreover, even if trial counsel performed deficiently, Wade has not shown that he was prejudiced. The circuit court specifically instructed the jury to disregard the reference to dealing. Jurors are presumed to follow the court's instructions. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Thus, the curative instruction cured any prejudice. *See State v. Bembenek*, 111 Wis. 2d 617, 634, 331 N.W.2d 616 (Ct. App. 1983) (stating that "[w]here a [circuit] court gives the jury a curative instruction, the appellate court may conclude that such instruction erased any possible prejudice" when there is no indication that the jury disregarded the admonition).

### F. Exhibit 25

¶38     After the conclusion of the evidence, the parties discussed what exhibits should be sent to the jury if requested. Trial counsel objected to the jurors seeing Exhibit 25, a domestic violence supplemental form, because it "contains some things that weren't testified about," "would be hearsay" and it mentioned a "gun."

¶39     After a recess, the circuit court told trial counsel and the prosecutor that the jury had asked to see "[a]bout 27 … exhibits." The court inquired whether

13

there were any issues with sending the requested exhibits to the jury. Trial counsel responded that he only had an issue with providing Exhibit 31. The court sent all of the requested exhibits back, except for Exhibit 31. The court inquired whether Wade was "on board with what we're doing here?" Trial counsel responded that "I didn't have a chance to run it by him, but … from my discussions with him, that is consistent with his wishes." The record does not reflect which exhibits were sent to the jury.

¶40 Wade contends that trial counsel was ineffective for failing to confer with him about the exhibits and request Wade's presence during the discussion of the exhibits. Wade argues that if trial counsel had consulted him and he had been present, he could have reminded trial counsel to object to Exhibit 25. In addition, Wade asserts that trial counsel was ineffective for failing to make a proper record.

¶41 The problem, however, is that there is no indication on the record that Exhibit 25 was in fact one of the exhibits requested, and sent, to the jury. Moreover, Wade does not explain how he would prove that Exhibit 25 was sent to the jury. For example, Wade does not assert that trial counsel would testify at a hearing that the jury saw Exhibit 25. As a result, we conclude that Wade's arguments are conclusory and insufficiently pled. *See State v. Balliette*, 2011 WI 79, ¶68, 336 Wis. 2d 358, 805 N.W.2d 334 (stating that a defendant must explain "*how*" he intends to show deficient performance). A challenge to trial counsel's performance must be based on more than speculation. *State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126.

### III.    Ineffective Assistance of Postconviction/Appellate Counsel

¶42    Wade argues that his postconviction/appellate counsel was ineffective for failing to frame his claims of circuit court error as ineffective assistance of trial counsel claims.  We disagree.

¶43    On direct appeal, Wade argued that the circuit court erred in overruling trial counsel's hearsay objections to a police officer's testimony describing what A.C. said about the incident and A.C.'s statements recorded in the domestic violence supplemental form, Exhibit 25.  *Wade*, No. 2017AP1021-CR, ¶1.    Although we concluded that these arguments were forfeited, we also concluded that any error was harmless.  *Id.*, ¶¶15-31, 41-50.  Because any error was harmless, Wade cannot establish that he was prejudiced, and thus, that trial counsel was ineffective.  *See State v. Weed*, 2003 WI 85, ¶35, 263 Wis. 2d 434, 666 N.W.2d 485.    Accordingly, postconviction/appellate counsel cannot be ineffective for failing to frame these arguments as ineffective assistance of trial counsel claims.  *See Ziebart*, 268 Wis. 2d 468, ¶15 (stating that when a defendant claims ineffective assistance of postconviction or appellate counsel based on the failure to assert trial counsel's ineffectiveness, the defendant must first establish that trial counsel provided ineffective assistance).

¶44    In addition, Wade claimed on direct appeal that the circuit court erred when it discussed a jury question while Wade was not present, which resulted in Exhibit 25 being sent to the jury.  *Wade*, No. 2017AP1021-CR, ¶32.  As discussed above in this opinion, Wade has only offered a speculative, conclusory assertion that the jury actually received Exhibit 25.  Thus, Wade's claim that trial counsel was ineffective in this respect is insufficiently pled.  Accordingly, Wade cannot prevail on a claim that postconviction/appellate

counsel should have raised an ineffective assistance of trial counsel claim related to Exhibit 25. *See **Ziebart***, 268 Wis. 2d 468, ¶15.

¶45     Wade also contends that postconviction/appellate counsel was ineffective for: (1) failing to litigate his right to be present claim in the circuit court; and (2) failing to respond to the State's argument in this court that sending Exhibit 25 to the jury was harmless error. However, these arguments also fail. To repeat, Wade has failed to sufficiently plead that Exhibit 25 actually went to the jury. It follows then that Wade has also failed to sufficiently plead his claim that postconviction/appellate counsel ineffectively litigated a claim that the jury saw Exhibit 25.

¶46     Finally, Wade contends that trial counsel admitted he was ineffective in a brief to the circuit court that was filed prior to sentencing. This mischaracterizes trial counsel's statements—trial counsel simply stated that a postconviction lawyer would inevitably allege that he was ineffective, not that he was ineffective.

¶47     Therefore, for all of the reasons above, we conclude that Wade is not entitled to relief and the circuit court properly denied his WIS. STAT. § 974.06 motion without an evidentiary hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.